IN THE MATTER OF: THE APPEALS OF THE GREENSBORO OFFICE PARTNERSHIP AND THE GUILFORD COUNTY TAX SUPERVISOR FROM THE VALUATION OF THE WACHOVIA BANK BUILDING IN GREENSBORO, N.C. BY THE GUILFORD COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1982

No. 8410PTC556

(Filed 5 February 1985)

Taxation § 25.7— ad valorem tax—valuation of bank building—potential market rentals properly considered

In determining the proper tax valuation for the Wachovia Building and its lot in Greensboro, the Property Tax Commission did not err in rejecting the $6,300,000 sales price recently received in an arm's length negotiated sale as the basis for valuation and valuing the property according to potential market rentals rather than its actual rental income pursuant to G.S. 105-283 and G.S. 105-317(a).

APPEAL by petitioner from a final decision of the North Carolina Property Tax Commission entered 28 February 1984. Heard in the Court of Appeals 17 January 1985.

The Greensboro Office Partnership, taxpayer, petitioned the Guilford County Board of Commissioners, sitting as the 1982 Guilford County Board of Equalization and Review, for review of the tax valuation of the Wachovia Building and its lot. Both petitioner and respondent Guilford County appealed to the Property Tax Commission, sitting as the State Board of Equalization and Review, from the decision of the 1982 Guilford County Board of Equalization and Review.

The Property Tax Commission's (hereinafter Commission) findings of fact, which are unchallenged on appeal, show the following: The Greensboro Office Partnership (hereinafter petitioner) bought the Wachovia Building and its lot in September, 1981, for $6,300,000. The Wachovia Building and its lot (hereinafter the property) along with an adjoining lot had been valued together at $9,262,180 in the 1980 octennial reappraisal. After petitioner purchased the property, but not the adjoining lot, respondent assigned a $9,071,800 value to it.

The Guilford County Board of Equalization and Review reduced the property valuation to $8,104,410, which was purportedly a 12.5% reduction. A 12.5% reduction would actually result in a value of $7,937,825.

Petitioner's purchase of the property for $6,300,000 was the product of an arm's length transaction reached after an extensive sales campaign by the previous owner. At the time of the sale, the price of the property was diminished by the existence of a lease encumbering the property for another fifteen years at a below-market rental rate. The lease had originally been negotiated in an arm's length transaction in order to secure construction financing for the Wachovia Building. The lease provided for a thirty-year term and had set a rental rate at market level as of the date it was executed, but since then market rentals for comparable properties have increased, thereby adversely affecting the price for which the Wachovia Building could be sold.

Respondent's tax appraiser valued the property at $9,703,000 with a comparable sales method of analysis, at $9,182,000 with an

income method of analysis, and at $14,972,632 with a cost method of analysis. In determining the valuation based on income, the tax appraiser used an estimated market rental income rather than the property's actual rental income, which was affected by the unfavorable below-market rental rate set in the lease.

The Commission concluded in part that:

(1) The September, 1981, sale of the property under appeal was a bona fide, arm's length transaction between the parties to the transaction.

(2) The long-term lease at below-market rentals held by Wachovia Bank at the time of sale was and is an encumbrance on the property under appeal which, as stipulated by the parties, affected and diminished the price paid by the taxpayer for the property.

(3) The $6,300,000 sales price or market price for the property under appeal was not equal to its market value at the time of sale.

(4) The sales price of $6,300,000 paid by the taxpayer was consideration for an interest in real property that was and is something less than total fee ownership rights in the property.

(5) The fair market value of the taxpayer's interest in the Wachovia Building is less than the fair market value of the total property interest which is subject to ad valorem taxation.

(6) The taxpayer failed to produce substantial evidence of the fair market value of the property under appeal other than the sales price of $6,300,000.

(7) It was not arbitrary or illegal for the county to utilize potential market rentals instead of actual rental income in the income-approach method of appraising the property under appeal.

(8) It was not arbitrary or illegal for the county to utilize and weigh heavily the income-approach method of appraising the property under appeal.

(9) The valuation placed on the property under appeal by the tax supervisor—$9,071,800—is supported by competent and substantial evidence.

Thus the Commission based the true value or fair market value of the property on its potential market rental income rather than its market price. From judgment setting a valuation of $9,071,800, petitioner appealed to this Court under G.S. 105-345.

*Smith, Moore, Smith, Schell & Hunter, by Larry B. Sitton and E. Garrett Walker, for petitioner, appellant.*

*William B. Trevorrow for respondent, appellee.*

HEDRICK, Chief Judge.

The scope of appellate review is set forth in G.S. 105-345.2, which in pertinent part provides:

(b) . . . The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record . . . and due account shall be taken of the rule of prejudicial error.

Ad valorem tax assessments are presumed correct, so petitioner must show under G.S. 105-345.2 that "(1) Either the county tax

supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property." *In re Appeal of Amp, Inc.*, 287 N.C. 547, 563, 215 S.E. 2d 752, 762 (1975) (emphasis in original). *See also In re Odom*, 56 N.C. App. 412, 289 S.E. 2d 83, *cert. denied*, 305 N.C. 760, 292 S.E. 2d 575 (1982).

Petitioner contends the Commission erred in (1) rejecting the $6,300,000 sales price as the basis for valuation, and (2) valuing the property according to potential market rentals rather than its actual rental income. Two statutes, which must be read in conjunction, are relevant to these contentions. G.S. 105-283 provides in part:

> All property . . . shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

G.S. 105-317(a) states specific factors to be considered in arriving at "true value":

> Whenever any real property is appraised it shall be the duty of the persons making appraisals:
>
> . . .
>
> (2) In determining the *true value* of a building or other improvement, to consider at least its location; type of construction; age; replacement cost; cost; *adaptability for* residence, *commercial*, industrial, *or other uses; past income; probable future income; and any other factors that may affect its value.*

(Emphasis added.) Thus, there are a multitude of factors to be considered. The Commission's findings show it considered the sales price, petitioner's affidavits of value, the actual rental income, and valuations derived from cost analysis, income analysis,

and comparable sales analysis. All this evidence was relevant to the statutory factors that must be considered in arriving at "true value." However, the weight to be attributed to the evidence is a matter for the fact finder, which in this case is the Commission.

The Commission's findings and conclusions indicate it placed much weight on respondent's income analysis valuation and little or no weight on petitioner's evidence of value, including the sales price. Contrary to petitioner's claims, neither G.S. 105-283 nor 105-317(a) requires the Commission to value property according to its sales price in a recent arm's length transaction when competent evidence of a different value is presented. G.S. 105-317(a) authorizes valuation on the basis of commercial use, past and future income, and other factors. Our Supreme Court has held that potential rental income is a proper basis for valuation under an earlier version of this statute in a case where unfavorable leases yielded a much lower actual rental income:

> The statute . . . in fixing the guide which assessors must use in valuing property for taxes, includes as a factor "the past income therefrom, its probable future income." But the income referred to is not necessarily actual income. The language is sufficient to include the income which could be obtained by the proper and efficient use of the property. To hold otherwise would be to penalize the competent and diligent and to reward the incompetent or indolent.
>
> . . . If it appears that the income actually received is less than the fair earning capacity of the property, the earning capacity should be substituted as a factor rather than the actual earnings. The fact-finding board can properly consider both.

*In re Pine Raleigh Corp.*, 258 N.C. 398, 403, 128 S.E. 2d 855, 859 (1963). Thus, the Commission's conclusions of law numbers 7, 8, and 9, which accepted respondent's valuation derived from the earning capacity of the property, are entirely appropriate and support its valuation decision.

Affirmed.

Judges WHICHARD and PARKER concur.