IN THE MATTER OF: THE APPEAL OF PERRY-GRIFFIN FOUNDATION FROM THE APPRAISAL OF CERTAIN REAL PROPERTY BY THE PAMLICO COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1989

No. 9110PTC1222

(Filed 5 January 1993)

1. Taxation § 25.7 (NCI3d)— property tax valuation—property within trust—sale forbidden by trust—highest and best use—sale for development

The Tax Commission did not err by reversing the Pamlico County Board's valuation where the property in question was held by a charitable trust; the terms of the trust forbade the sale of the real estate, but allowed leasing and the sale of timber; the trust had instituted a lawsuit seeking to modify the terms of the trust to enable it to market the forest land; the lawsuit was resolved in a judgment which permitted the sale of so much of the rental (town) property as was necessary and in effect precluded development and/or sale of the forest property; the County valued the forest land at $2,293,440, based upon the assumption that the property is subject to development and sale as residential and/or recreational property; and the value of the property as timberland was $331,012. Under the statutorily mandated whole record test of N.C.G.S. § 105-345.2, this Court is not permitted to replace the Tax Commission's judgment with its own judgment even where there are two reasonably conflicting views, and the weight to be attributed to the evidence is a matter for the fact finder.

Am Jur 2d, State and Local Taxation §§ 759-763.

Requirement of full-value real property taxation assessments. 42 ALR4th 676.

Sale price of real property as evidence in determining value for tax assessment purposes. 89 ALR3d 1126.

IN RE APPEAL OF PERRY-GRIFFIN FOUNDATION

[108 N.C. App. 383 (1993)]

2. **Taxation § 25.7 (NCI3d)— valuation—County's valuation arbitrary—evidence of lesser value—burden shifting to County**

There was no error in the Tax Commission's determination that the Pamlico County Board's residential and recreational use valuation was substantially greater than the timberland valuation. With the plaintiff having shown that the Pamlico County Board's valuation was arbitrary and substantially greater than the true value of the land, the burden then shifted to the Pamlico County Board, which produced nothing to rebut the evidence and which accordingly failed to meet its burden. N.C.G.S. § 105-345.2(b)(5).

**Am Jur 2d, State and Local Taxation §§ 759-763.**

**Requirement of full-value real property taxation assessments. 42 ALR4th 676.**

**Sale price of real property as evidence in determining value for tax assessment purposes. 89 ALR3d 1126.**

3. **Taxation § 25.7 (NCI3d)— property tax—factors affecting property's value—refusal to consider**

The Property Tax Commission did not err by finding that the Pamlico County Board acted arbitrarily in its refusal to consider factors affecting the property's value under N.C.G.S. § 105-317(a) where the property was held in a charitable trust which forbade sale of the property; the trust had earlier sought the Superior Court's approval to sell the timberland to a willing purchaser and the Court refused to declare the restraint on alienation void; and the County valued the property based on the assumption that it is subject to sale and development. Because of the valid and enforceable restraint on alienation, the property itself is unmarketable and taxing the property according to normal market assumptions would be unfair to the charitable trust and would seriously erode and ultimately defeat the public policy in favor of charitable trusts. There is no statutory proscription against the Tax Commission's declining to use the highest and best use valuation provided it has considered both the specifically enumerated factors of N.C.G.S. § 105-317(a) and any other factors that may affect the land's value.

**Am Jur 2d, State and Local Taxation §§ 759-763.**

IN RE APPEAL OF PERRY-GRIFFIN FOUNDATION

[108 N.C. App. 383 (1993)]

Requirements of full-value real property taxation assessments. 42 ALR4th 676.

Sale price of real property as evidence in determining value for tax assessment purposes. 89 ALR3d 1126.

Appeal by Pamlico County and the Pamlico County Board of Equalization and Review for 1989 from a final decision of the North Carolina Property Tax Commission (sitting as the State Board of Equalization and Review) entered 5 September 1991. Heard in the Court of Appeals 10 November 1992.

This case involves a dispute between Perry-Griffin Foundation, taxpayer (hereinafter "Foundation-taxpayer"), and the Pamlico County Board of Equalization and Review for 1989 (hereinafter "Pamlico County Board"), whose appraisal of Foundation-taxpayer's property was reversed by the Property Tax Commission (hereinafter "Tax Commission"). The "undisputed facts," as stipulated by Foundation-taxpayer and the Pamlico County Board in their "Order On Final Pre-hearing Conference" filed with the Tax Commission and as adopted by the Tax Commission as part of its findings of fact in its 5 September 1991 final decision, are as follows:

1. Taxpayer, Perry-Griffin Foundation, (hereinafter referred to as "Foundation") is a non-profit corporation of North Carolina organized and chartered pursuant to the provision of Chapter 55A, General Statutes of North Carolina, with its principal office in Oriental, Pamlico County, North Carolina; and is a charitable trust, created by the last will and testament of Clare G. Perry, late of Pamlico County, North Carolina, who died testate April, 1965. A true copy of said last will and testament of Clare G. Perry is one of the exhibits identified herein.

2. The will directs that a foundation be established for certain "religious, benevolent, and educational purposes" and appoints five directors to administer the same.

The Foundation is qualified as a tax exempt charitable entity pursuant to Section 501(c)(3) of the U.S. Internal Revenue Code.

3. The primary mission of the charitable trust is (a) the construction and maintenance of living quarters for women of limited means; and, (b) making of educational loans to students.

4. Article IV provides that: "no real estate is to be sold, however, it may be leased in the discretion of the directors, provided however, the timber may be sold at the discretion of the directors."

5. The assets of the trust consist primarily of real estate. The unimproved real estate (forest land) constitutes the bulk of the assets of the estate of which there are approximately 1,135 acres located generally around but outside the Town of Oriental in Pamlico County. This forest land is the subject matter of this proceeding. Most of the remaining assets of said trust consists [sic] of real property located within the town limits of Oriental, including an office building and lot on which it is situated, a small house and lot, and several vacant lots. The town property valuation is not contested nor involved in this proceeding.

6. The total valuation by Pamlico County for the forest land for tax purposes is $2,293,440.00. This valuation is based upon the assumption that the property is subject to development and sale as residential and/or recreational property.

7. The taxpayer has no quarrel with the County's valuation of said property as forest land.

8. The taxpayer is legally unable to develop, sell or market said forest lands and is unable legally to make any other use of the same except to harvest timber.

In July of 1987, taxpayer instituted a lawsuit pursuant to North Carolina General Statute 36A, seeking to modify the terms of this trust to enable it to market the said forest land pursuant to the enabling powers of *cy pres*, and seeking to enlarge the mission and objects of the trust in order to justify sale and marketing of the forest land. This lawsuit also sought to have the restraint on alienation of real property declared void as against public policy.

9. The said lawsuit, after trial, was resolved in a "judgment" of the Superior Court dated March 21, 1988, which held, *inter alia*, that the restraint on alienation of land is not void as against public policy because the property is held in a charitable trust; and, that pursuant to *cy pres*, in order to fund the purposes of the trust, the Foundation was permitted to sell so

much of the rental property (in town property) as is necessary to effect the ends and purposes of the trust.

The net effect of this judgment was to preclude development and/or sale of forest property in that a sale of only a portion of the in-town property was sufficient to fund the purposes of the trust hereinabove described.

10. This judgment was appealed through the North Carolina Court of Appeals, which affirmed *in toto* the Superior Court's judgment and held that: "the Foundation being a charitable trust the restraints on the alienation of its real property are not invalid. G.S. 36A-49."

11. Petition for certiorari was made to the North Carolina Supreme Court and denied.

This taxpayer has sold, pursuant to said judgment, several pieces of real estate in the Town of Oriental and has accumulated sufficient funds therefrom to fund the purposes of the trust.

Additionally, in its 5 September 1991 final decision the Tax Commission made the following findings of fact:

Findings of Fact

The Commission adopts the Stipulations set out above as part of its Findings of Fact. Based on the evidence presented by the parties and listed above, the Commission adopts the facts contained in the Statement of Case as part of its Findings of Fact, and makes the following additional findings:

1. The Taxpayer, Perry-Griffin Foundation, is prevented by a legally binding restraint on alienation from selling the subject property without the approval of a Superior Court Judge.

2. The restraint on alienation does not run with the land; in the event that the Foundation were to sell some or all of the subject property, the purchaser would take the land free and clear of all restriction [sic], and would be free to utilize the property for its highest and best use, which is residential and recreational development.

3. The County's appraisal of the subject property is consistent with the County's appraisal of similar property having the same "highest and best use" and located in the same area.

Further, the County's appraisal was conducted in accordance with its duly adopted schedule of values.

4. The County's appraisal of the subject property did not exceed the value which the subject property would have commanded if it had been offered for sale (free of restrictions) on 1 January 1989. The market value of the property for development purposes as of 1 January 1989 was greater than the County's appraisal of $2,293,440, or approximately $2,022 per acre.

5. The Will of Clare G. Perry is the only impediment to actual development of the subject property for residential and recreational purposes. In all other respects, the land is physically and legally capable of residential and recreational use, and a ready market exists in Pamlico County for land adaptable for such uses.

6. The essence of the Taxpayer's argument is that the County's refusal to consider the effect of the restraint against alienation in the course of its appraisal was arbitrary. The Commission agrees.

7. The Commission finds that, as of 1 January 1989, the value of the subject property to the Taxpayer was $331,012.00. This represents the value of the property as timber land, without considering its potential for residential and recreational development.

The Tax Commission then reversed the decision of the Pamlico County Board by entering the following "Conclusions, Decision, and Order" in its 5 September 1991 final decision:

Based on its Findings of Fact, as set forth above, the Commission makes the following Conclusions of Law:

1. The restraint on alienation created by the Will of Clare G. Perry is legally binding on the trustees of the Perry-Griffin Foundation. The County's refusal to consider the effect of this restriction in its appraisal of the subject property was arbitrary, and resulted in an appraisal of the subject property which was substantially greater than its true value in money as of 1 January 1989.

2. The true value in money of the subject property as of 1 January 1989 was $331,012.00, based on the ability of the land to produce income through timber production.

. . . .

. . . [T]he property has not changed hands, nor is it possible for the Taxpayer to sell the property without approval from the Superior Court. If the Taxpayer were able to sell the subject property, the purchaser would take it free of restrictions and would pay a price consistent with the County's appraisal. The Taxpayer, however, is unlikely to receive approval for such a sale within the foreseeable future. The value of the land in the hands of the Taxpayer, therefore, is its value for timber production purposes.

WHEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that the decision of the Pamlico County Board of Equalization and Review for 1989 concerning the appraisal of the subject property for the tax year 1989 is REVERSED. The Commission finds the facts in this case to be unique and accordingly reaches its decision solely on the facts presented in this case. The County is instructed to reduce the appraised value of the subject property, effective 1 January 1989, from $2,293,440 to $331,012.00, and to make such changes in its tax records as may be needed to reflect the findings and conclusions of the Commission set forth herein.

One member of the Tax Commission dissented from the final decision. Pamlico County and the Pamlico County Board appeal from the Tax Commission's final decision.

*Sumrell, Sugg, Carmichael & Ashton, by James R. Sugg, Rudolph A. Ashton, III, and Jimmie B. Hicks, for appellant, Pamlico County and Pamlico County Board of Equalization and Review for 1989.*

*Henderson, Baxter, & Alford, P.A., by David S. Henderson and Brian Z. Taylor, for appellee, Perry-Griffin Foundation.*

EAGLES, Judge.

The Board brings forth two assignments of error concerning the Tax Commission's final decision. These assignments of error present the following issues: (1) whether the Tax Commission erred

in its reversal of the Pamlico County Board's valuation of the property; and (2) whether the Tax Commission's decision places uniformity in assessments at risk. After a thorough and careful review of the record, we affirm the final decision of the Tax Commission.

## I.

Initially, we note the important competing interests involved in this case in light of this Court's statement in *In Re Appeal of Bosley*, 29 N.C. App. 468, 472-73, 224 S.E.2d 686, 689, *disc. review denied*, 290 N.C. 551, 226 S.E.2d 509 (1976), recognizing that "[i]t would be meaningless to construe literally the applicable appraisal statutes of the Machinery Act. These statutes must be interpreted in the light of tax history and legislative purpose in formulating laws to guide local authority in the difficult and complex problem of appraising property for tax purposes." On the one hand, there are the significant and substantial concerns involving the general principles of uniformity and equality in taxation, well established in numerous opinions addressing contexts other than the taxation of the property of charitable trusts. *See generally Realty Corp. v. Coble, Sec. of Revenue*, 291 N.C. 608, 231 S.E.2d 656 (1977); *Bosley*, 29 N.C. App. 468, 224 S.E.2d 686; *Hajoca Corp. v. Clayton, Comr. of Revenue*, 277 N.C. 560, 178 S.E.2d 481 (1971).

On the other hand, there are the significant and substantial concerns involving both the unique characteristics and public policy purposes of charitable trusts, previously recognized in numerous opinions and statutes. *See generally Board of Trustees of UNC-CH v. Heirs of Prince*, 311 N.C. 644, 648, 319 S.E.2d 239, 242 (1984) ("It is a well recognized principle that gifts and trusts for charities are highly favored by the courts. Thus, the donor's intentions are effectuated by the most liberal rules of construction permitted."); *Edmisten v. Sands*, 307 N.C. 670, 674, 300 S.E.2d 387, 390 (1983) ("This Court unquestionably concurs with the trial court's finding that the public policy of North Carolina is to preserve, to the fullest extent possible, the manifested intention of a testator or donor to bestow a gift for charitable purposes. The policy of protecting charitable trusts is repeatedly declared throughout the statutory provisions of Chapter 36A."); *YWCA v. Morgan, Attorney General*, 281 N.C. 485, 189 S.E.2d 169 (1972) (defining charitable trusts and the *cy-pres* doctrine); *Trust Co. v. Morgan, Attorney General*, 279 N.C. 265, 272, 182 S.E.2d 356, 361 (1971) ("long-established policy" that courts should assist in carrying out the charitable purposes

of charitable trusts); *Trust Co. v. Construction Co.*, 275 N.C. 399, 168 S.E.2d 358 (1969) (rule against perpetuities does not apply to a charitable trust, which is an exception to the rule that a restraint on alienation is void); *Sternberger v. Tannenbaum*, 273 N.C. 658, 678-79, 161 S.E.2d 116, 131 (1968) ("It seems that the State as *parens patriae*, through its Attorney General, has the common law right and power to protect the beneficiaries of charitable trusts and the property to which they are or may be entitled."); G.S. 36A-52(a) (declaring "the policy of the State of North Carolina that . . . devises for religious, educational, charitable, or benevolent uses or purposes . . . are and shall be valid . . . and this section shall be construed liberally to affect [sic] the policy herein declared."); G.S. 36A-52(b) (not invalid for indefiniteness); G.S. 36A-52(c) (remedy for enforcement "in a suit for a writ of mandamus by the Attorney General"); G.S. 36A-53 (Charitable Trusts Administration Act); G.S. 36A-54 (tax-exempt status).

We also note that the land in controversy here has been the subject of earlier litigation. Foundation-taxpayer filed a complaint in Pamlico County Superior Court on 8 July 1987 seeking to have the restraint on alienation voided "[b]ecause of the inability of the foundation to generate sufficient assets or income to provide the charitable objects created in the Will." In that action brought pursuant to G.S. 36A-53(a), Foundation-taxpayer sought the Superior Court's permission to sell its real properties, including the timberland which the Pamlico County Board seeks to tax at its highest and best use of residential and recreational development. In the complaint, Foundation-taxpayer specifically alleged that "[t]he Foundation has a good faith offer to purchase its timberland tracts for Two Million Two Hundred Thousand Dollars ($2,200,000.00)." The proposed purchaser intervened as a party plaintiff. On 21 March 1988, the Superior Court issued a judgment ruling that the restraint on alienation was valid and enforceable and authorizing "a sale of so much of the real property as is necessary to accomplish such charitable purposes [as found in Perry's will]." The judgment specifically directed that the rental properties were to be sold first. In *Perry-Griffin Foundation v. Thornburg*, 93 N.C. App. 790, 379 S.E.2d 114, *disc. review denied*, 325 N.C. 272, 384 S.E.2d 518 (1989) (unpublished opinion), this Court affirmed the Superior Court's judgment and held that the restraint on the alienation of Foundation-taxpayer's property was valid and enforceable precisely because Foundation-taxpayer was a charitable trust. This Court stated:

IN RE APPEAL OF PERRY-GRIFFIN FOUNDATION

[108 N.C. App. 383 (1993)]

> In directing that the rental property be sold first and only so much of the timberland as is necessary to create the loan fund and build the houses referred to in the will the court reformed the trust in a manner that appears to be in accord with its best interest and that will least conflict with the testatrix's ban against selling any of the trust real estate. While the court might have justifiably approved the sale of all the rural real estate to the intervenor for $2,200,000, it certainly did not err in declining to do so since, *inter alia*, expert evidence was presented to the effect that the timberland is worth twice that amount. Nor is it fatal to the judgment that it makes no provision for either meeting the foundation's annual maintenance costs and expenses or for eventually disposing of or using the other real property and any remaining surplus after the relatively small needs of the student loan funds and homes for ladies of limited means are met. Such provisions can be made under the court's *cy-pres* powers whenever it is made to appear that they are either necessary, as paying the foundation's expenses certainly is, or in the best interest of the trust.

*Id.* Accordingly, the Pamlico County Board and Foundation-taxpayer have stipulated before the Tax Commission that "[t]he net effect of this [the Superior Court's 21 March 1988] judgment was to preclude development and/or sale of forest property in that a sale of only a portion of the in-town property was sufficient to fund the purposes of the trust" and that Foundation-taxpayer "is legally unable to develop, sell or market said forest lands and is unable legally to make any other use of the same except to harvest timber."

II.

[1] The Pamlico County Board argues that the Tax Commission erred by reversing the Pamlico County Board's valuation. The Pamlico County Board's valuation was based on the assumption that residential and recreational development was the highest and best use of Foundation-taxpayer's property. The Pamlico County Board argues that this reversal was "unlawful, unreasonable, unjust and unwarranted." We disagree and find that the Tax Commission did not err.

"G.S. 105-345.2 governs the extent of review for appeals from the Property Tax Commission and its provisions are remarkably identical to those found in G.S. 150A. . . . G.S. 105-345.2(c) provides

**IN RE APPEAL OF PERRY-GRIFFIN FOUNDATION**

[108 N.C. App. 383 (1993)]

that the court shall review the whole record and due account shall be taken of the rule of prejudicial error." *In re McElwee*, 304 N.C. 68, 73-74, 283 S.E.2d 115, 119 (1981). G.S. 105-345.2 provides:

> (b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or
>
> (4) Affected by other errors of law; or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

Under the statutorily mandated whole record test of G.S. 105-345.2, this Court is not permitted to replace the Tax Commission's judgment with its own judgment even where there are two reasonably conflicting views. "The whole record test is not 'a tool of judicial intrusion; instead it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence.' " *Rainbow Springs Partnership v. County of Macon*, 79 N.C. App. 335, 341, 339 S.E.2d 681, 685, *disc. review denied*, 316 N.C. 734, 345 S.E.2d 392 (1986) (*quoting In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979) ); *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E.2d 538 (1977). Furthermore, "[r]esolving conflicts in the evidence and weighing the credibility of the witnesses is for the fact-finder, in this case, the [Property Tax] Commission." *Rainbow Springs Partnership*, 79 N.C. App. at 343, 339 S.E.2d at 686 (citing *In re Appeal of the Greensboro Office Partnership*, 72 N.C. App. 635, 325 S.E.2d 24, *disc. review denied*, 313 N.C. 601, 330 S.E.2d

610 (1985) ). In reviewing whether the whole record fully supports the Commission's decision, this Court must evaluate whether the Commission's judgment, as between two reasonably conflicting views, is supported by substantial evidence, and if substantial evidence is found, this Court is not permitted to overturn the Tax Commission's decision. *Rainbow Springs Partnership*, 79 N.C. App. 335, 339 S.E.2d 681; *Thompson*, 292 N.C. 406, 233 S.E.2d 538.

"It is a principle of law in this State that ad valorem tax assessments are presumed correct. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 215 S.E.2d 752 (1975); *In re Land and Mineral Co.*, 49 N.C. App. 60[8], 272 S.E.2d 878 (1980), *disc. rev. denied*, 302 N.C. 397, 279 S.E.2d 351 (1981). This presumption places the burden upon the taxpayer to prove that the assessments are incorrect." *In re Odom*, 56 N.C. App. 412, 413, 289 S.E.2d 83, 85-86, *cert. denied*, 305 N.C. 760, 292 S.E.2d 575 (1982). Regarding the rebuttal of this presumption, our Supreme Court has stated:

> We also noted in *Amp* that the presumption of correctness by the county officials is, of course, rebuttable:
>
>> [I]n order for the taxpayer to rebut the presumption [of correctness] he must produce "competent, material and substantial" evidence that tends to show that: (1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of evaluation; AND (3) the assessment *substantially* exceeded the true value in money of the property. [Citation omitted.] Simply stated, it is not enough for the taxpayer to show that the means adopted by the tax supervisor were wrong, he must also show that the result arrived at is *substantially* greater than the true value in money of the property assessed, i.e., that the valuation was *unreasonably high.*
>
> 287 N.C. at 563, 215 S.E.2d at 762 (emphasis in original).
>
> . . . .
>
> When a taxpayer has rebutted the presumption of regularity in favor of the county, as appellants have here, the burden then shifts to the county to demonstrate to the Property Tax Commission that the values determined in the revaluation process were not substantially higher than that called for by the statutory formula, and the county must demonstrate the

reasonableness of its valuation "by competent, material and substantial evidence." G.S. 105-345.2(b)(5).

> At this juncture, we reiterate that it is the function of the administrative agency to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence. We cannot substitute our judgment for that of the agency when the evidence is conflicting. *Commissioner of Insurance v. Rate Bureau*, 300 N.C. 381, 269 S.E.2d 547 [1980].

*McElwee*, 304 N.C. at 75, 86-87, 283 S.E.2d at 120, 126-27 (alterations in original).

In reviewing valuation decisions, two statutes, G.S. 105-283 and G.S. 105-317(a), "must be read in conjunction." *Greensboro Office Partnership*, 72 N.C. App. at 639, 325 S.E.2d at 26. G.S. 105-283 provides in pertinent part:

> All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

G.S. 105-317(a) lists the types of factors that are to be considered when determining the "true value" of real property:

> (a) Whenever any real property is appraised it shall be the duty of the persons making appraisals:

> (1) In determining the true value of land, to consider as to each tract, parcel, or lot separately listed at least its advantages and disadvantages as to location; zoning; quality of soil; waterpower; water privileges; dedication as a nature preserve; mineral, quarry, or other valuable deposits; fertility; adaptability for agricultural, timber-producing, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value except growing crops of a seasonal or annual nature.

IN RE APPEAL OF PERRY-GRIFFIN FOUNDATION

[108 N.C. App. 383 (1993)]

The Tax Commission's findings show that it considered the factors listed above. In its findings of fact, the Tax Commission stated "[t]he Taxpayer, Perry-Griffin Foundation, is prevented by a legally binding restraint on alienation from selling the subject property without the approval of a Superior Court judge" and that the restraint on alienation was an "impediment to [the] actual development of the subject property for residential and recreational purposes." The Tax Commission's findings of fact also show that the Tax Commission fully realized that "in the event that the Foundation were to sell some or all of the subject property, the purchaser would take the land free and clear of all restriction [sic], and would be free to utilize the property for its highest and best use, which is residential and recreational development." From its consideration of these factors, the Tax Commission concluded that Foundation-taxpayer "is unlikely to receive approval for such a sale within the forseeable future. The value of the land in the hands of the Taxpayer, therefore, is its value for timber production purposes."

We find that all of this evidence was relevant to the statutory factors of G.S. 105-317(a). "[T]he weight to be attributed to the evidence is a matter for the fact finder, which in this case is the [Property Tax] Commission." Greensboro Office Partnership, 72 N.C. App. at 640, 325 S.E.2d at 26. The Commission's findings and conclusions indicate that it placed much weight on the analysis of probable future income based on the other factor affecting the land's value, the binding restraint on alienation. G.S. 105-317(a) clearly provides that the factors of "probable future income," "past income," "adaptability for . . . timber-producing . . . uses," and "any other factors that may affect its [the land's] value" are to be considered in determining the true value of land. Furthermore, contrary to the Pamlico County Board's contentions, "neither G.S. 105-283 nor 105-317(a) requires the Commission to value property according to its sales price in a recent arm's length transaction when competent evidence of a different value is presented." Greensboro Office Partnership, 72 N.C. App. at 640, 325 S.E.2d at 26 (emphasis added). Accordingly, we find no error in the Tax Commission's decision.

[2] Similarly, we find no error in the Tax Commission's determination that the Pamlico County Board's residential and recreational use valuation, $2,293,440.00, was substantially greater than the timberland valuation of $331,012.00. See Land and Mineral Co.,

49 N.C. App. at 616, 272 S.E.2d at 883 (affirming Superior Court's reversal of Tax Commission's decision to sustain valuation by county that was five times in excess of the true value). With the plaintiff having shown that the Pamlico County Board's valuation was arbitrary and substantially greater than the true value of the land, the burden then shifted to the Pamlico County Board. The Pamlico County Board produced nothing to rebut this evidence and accordingly failed to meet its burden of demonstrating "that the values determined in the revaluation process were not substantially higher than that called for by the statutory formula, and . . . the reasonableness of its valuation 'by competent, material and substantial evidence.' G.S. § 105-345.2(b)(5)." *McElwee*, 304 N.C. at 86-87, 283 S.E.2d at 126.

### III.

[3] Additionally, the Pamlico County Board argues that the Tax Commission's decision "destroys the principle of uniformity in assessments for property tax purposes, especially where the restraint was voluntarily created by the taxpayer and where any grantee upon any future permitted conveyance will take free of any and all restraints, and therefore the Property Tax Commission's decision is unlawful, unjust, unreasonable, and unwarranted." We disagree.

In its brief, the Pamlico County Board argues:

> Note that N.C.G.S. § 105-283 states that the true value is the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller and for which it is adapted for and capable of being used. Such criteria necessarily refers to the property in the hands of the purchaser, not the seller. Legal restraints in the hands of the owner/seller are not relevant, but it is only the value of the land in the hands of a willing and financially able buyer that is relevant. A buyer of Foundation land would take free of any and all restraints. Therefore, in no manner does the Machinery Act allow for a consideration of facts whereby the seller of the land is under a voluntary legal restraint from selling said land in calculating its true value for tax purposes. Rather N.C.G.S. § 105-317(a) provides for particular factors to be considered in this "true value" determination, and all of these factors relate to encum-

brances which would affect the value of said land in the hands of a willing and financially able buyer.

We disagree. Initially, we note that from the Tax Commission's first five findings of fact, statement of the case, and conclusions, it is apparent that the Tax Commission duly considered this argument and the Pamlico County Board's reasons offered in support of its valuation.

The Machinery Act does not require the unyielding uniformity suggested by the Pamlico County Board in its brief. As noted *supra*, this Court has previously held that "neither G.S. 105-283 nor 105-317(a) *requires* the Commission to value property according to its sales price in a recent arm's length transaction when competent evidence of a different value is presented." *Greensboro Office Partnership*, 72 N.C. App. at 640, 325 S.E.2d at 26 (emphasis added). Additionally, G.S. 105-283 specifically provides that "[a]ll property, real and personal, shall *as far as practicable* be appraised or valued at its true value in money." (Emphasis added.) Had the legislature intended the unyielding uniformity proposed by the Pamlico County Board, it would not have included the words "as far as practicable" within the legislative directive of G.S. 105-283.

In the last paragraph of its final decision, the Tax Commission specifically emphasized that "[t]he Commission finds the facts in this case to be unique and accordingly reaches its decision based solely on the facts presented in this case." Accordingly, it is apparent that the Tax Commission found that to tax the Foundation-taxpayer's property according to the market value standard would not be "practicable" under G.S. 105-283 because of the unique circumstances involving the charitable trust in this case. The Tax Commission's decision is rational because there is no market, as the term is used in the Machinery Act, for the property in question. The record shows that in the earlier litigation Foundation-taxpayer sought the Superior Court's approval to sell the timberland to a willing purchaser and the Superior Court refused to declare the restraint on alienation void. The property cannot be sold without the application to and subsequent approval of the Superior Court. The Pamlico County Board itself stipulated that "[t]he taxpayer is legally unable to *develop, sell or market* said forest lands and is unable legally to make any other use of the same except to harvest timber." (Emphasis added.) Hence, no market, as the term is used in the Machinery Act, exists for this particular piece of

property. Because of the valid and enforceable restraint on alienation, the property itself is unmarketable. *Cf. McElwee*, 304 N.C. at 84, 283 S.E.2d at 125 (in appraisal process, county's decision that "does not comport with the realities of the economic world" held to be "plainly arbitrary"). Accordingly, to tax the property according to normal market assumptions would be unfair to the charitable trust and in doing so, would seriously erode and ultimately defeat the public policy of this State in favor of charitable trusts. At oral argument, counsel for appellant conceded that the Pamlico County Board's appraisal would place a severe tax burden on Foundation-taxpayer, such that Foundation-taxpayer would essentially be forced to sell a significant portion of the corpus of the trust just to pay the taxes. Accordingly, we find no error in the Tax Commission's finding that the Pamlico County Board acted arbitrarily in its refusal to consider these factors affecting the property's value under G.S. 105-317(a).

We have considered *In re Southern Railway*, 313 N.C. 177, 328 S.E.2d 235 (1985) and find it readily distinguishable. In that case, our Supreme Court overturned the Tax Commission's appraisal because the appraisal was based on the testimony of an expert who testified that " 'I find the true value of the railroad system property by determining the value to the owner of the property. I explained that *I do not consider value to a willing buyer* because railroad sales are few and those sales are abnormal and don't represent fair market.' (Emphasis added)." *Id.* at 188, 328 S.E.2d at 242. In *Southern Railway*, the owner of the railroad was free to sell the property at any time, whereas here we are dealing with the property of a charitable trust. Here, there is a legal restraint on alienation which serves as an impediment to the sale of the property and is supported by the public policy favoring charitable trusts.

Furthermore, in *Bosley*, 29 N.C. App. at 472, 224 S.E.2d at 689, this Court stated that "[i]t would be meaningless to construe literally the applicable appraisal statutes of the Machinery Act." This Court further emphasized that it is the uniformity in *reasonable variations* from market value which must be preserved, not outright uniformity in taxing each piece of property according to its hypothetical highest and best use in the marketplace:

> Equality of appraisal, with resulting equity in taxation, is fundamental in the Machinery Act. There may be *reasonable varia-*

*tions* from market value in appraisals of property for tax purposes *if these variations are uniform*. A uniform and dependable method of property appraisal which gives effect to the various factors that influence the market value of property and results in equitable taxation does not violate the appraisal provisions of the Machinery Act.

*Bosley*, 29 N.C. App. at 472, 224 S.E.2d at 688 (emphasis added). We agree and reaffirm this statement. There is no statutory proscription against the Tax Commission's declining to use the highest and best use valuation provided it has considered both the specifically enumerated factors of G.S. 105-317(a) and, as G.S. 105-317(a) itself provides, "any other factors that may affect its [the land's] value." Accordingly, since the Tax Commission's valuation decision was not strictly a question of law, we deem that the Tax Commission's decision was made in good faith and fell within a zone of reason, being well grounded in law and public policy, and as such was neither arbitrary nor illegal. Of course, the holding of this opinion is limited to the ad valorem taxation of real property held by charitable trusts.

## IV.

In sum, a careful and thorough review of the whole record shows that the Tax Commission's final decision is supported by competent, material, and substantial evidence. Since we have determined that the decision has a rational basis in the evidence, the Tax Commission's final decision, holding that the Foundation-taxpayer's property shall be taxed at the appraised value of $331,012.00, is affirmed.

Affirmed.

Judges PARKER and ORR concur.