IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-138

No. COA20-300

Filed 20 April 2021

North Carolina Property Tax Commission, No. 17 PTC 0246

IN THE MATTER OF THE APPEAL OF UNIFI MANUFACTURING INC., Appellee.

Appeal by Yadkin County from the Final Decision of the North Carolina Property Tax Commission entered 21 November 2019 by Chairman Robert C. Hunter at the North Carolina Property Tax Commission. Heard in the Court of Appeals 26 January 2021.

*J. Clark Fischer, Attorney for Appellant Yadkin County.*

*Collier R. Marsh, Attorney for the Appellee.*

GORE, Judge.

Yadkin County ("the County") appeals from the final Decision of the North Carolina Property Tax Commission ("the Commission") reversing the County's 2017 *ad valorem* property tax valuation of Unifi Manufacturing, Inc.'s ("taxpayer") textile manufacturing facility.

I.  Background

This case arises from the County's 2017 *ad valorem* tax assessment of the

taxpayer's textile manufacturing facility. In disagreement with the County's assessment, taxpayer filed a Notice of Appeal and Application for Hearing with the North Carolina Property Tax Commission. The Commission heard the appeal on its merits at a hearing on 1 October 2019.

¶ 3     The taxpayer's evidence before the Commission included the following. M. Scott Smith, an expert in real property appraisal, testified that he conducted the valuation of the property using three approaches to value (cost, sales comparison, and income) and reconciled all three approaches to arrive at his opinion of value of $16,060,000 (the same value as produced by the sales comparison approach) and that the net value of the property was $14.75 per square foot. Mr. Smith testified that the best use of the property would be continued industrial use and that the property suffered from significant obsolescence, in part because a substantial square footage of the property was a tower (the "F1 tower") custom built to house older technology that is no longer in use.

¶ 4     Douglas M. Faris, an expert in real estate brokerage, testified that in his opinion the subject property would be a challenge to resell because the property would be difficult to adapt to an alternate use; due to factors such as the F1 tower being "useless" in a different manufacturing operation and the property being much larger than most manufacturing operations require. Mr. Faris testified that the layout and other characteristics of the facility made it inappropriate for alternative uses, such

as warehouse or office space. In Mr. Faris's opinion a valuation of $14-$15 per square foot would be appropriate.

¶ 5        Sohan Mangaldas, an expert in textile global markets, testified that there has been a decline in U.S. based production of the polyester yarn produced at the facility and that there would be "no demand to purchase" the subject property for the purpose of continuing its current operation.

¶ 6        The County's evidence included testimony from Ronald S. McCarthy, an expert in *ad valorem* appraisal of industrial property, who conducted the appraisal of taxpayer's property. Mr. McCarthy testified that, in his opinion, the cost approach and the sales comparison approach would be most appropriate for valuation of the subject property. Mr. McCarthy further testified that he only relied on the cost approach; he had not prepared a sales comparison approach or an income approach in developing his appraisal of the subject property. Mr. McCarthy's report listed various features for the property and discussed how each feature contributed to the County's total value of $27,450,241. To support its valuation the County offered five sales as comparable to the subject property; the average sales price for these properties was $31.04 per square foot. Mr. Faris, one of the taxpayer's witnesses, testified that he was personally involved in each sale offered by the County, and that none of the properties was comparable to the subject property.

¶ 7        The Commission found that, of the three valuation approaches recognized in

North Carolina, the income approach is the least relevant here because the subject property is not income-producing. Additionally, the Commission concluded the cost approach is more challenging to develop accurately, and thus, should only be used as a test of reasonableness for a value developed by one of the other methods. The Commission found that the sales comparison approach is the most likely to produce a true value for the subject property.

¶ 8        The Commission recognized that a county's *ad valorem* tax assessment is presumptively correct. However, the Commission found that the taxpayer rebutted the presumption by offering competent, material, and substantial evidence that the County used an illegal appraisal method, and that the County's assessment of the subject property substantially exceeded its true value. Further, the Commission found that the County was not able to demonstrate that its method in appraising the subject property produced true value because it did not sufficiently explain how any of the three approaches to value supported the County's tax value. As a result, the Commission ordered that the 2017 tax value of the subject property be changed to $16,060,000.

## II.     Discussion

¶ 9        The County challenges the Commission's Final Decision asserting that the Commission failed to properly apply the presumption of correctness and that the whole record does not support the conclusion that the County's assessment of the

property was illegal. For the reasons discussed below, we disagree.

### A. Standard of Review

On appeal a decision of the Property Tax Commission is reviewed under the "whole record" test. *In re McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 127 (1981). "The Court must decide all relevant questions of law *de novo*, and review the findings, conclusions and decision to determine if they are affected by error or are unsupported 'by competent, material and substantial evidence in view of the entire record.'" *In re Appeal of Parsons*, 123 N.C. App. 32, 38–39, 472 S.E.2d 182, 187 (1996) (quoting *In re Appeal of Perry-Griffin Foundation*, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218 (1993)). "The 'whole record' test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *McElwee* at 87, 283 S.E.2d at 127 (quoting *In re Rogers*, 297 N.C. 48, 253 S.E.2d 912 (1979)).

### B. Presumption of Correctness

"*[A]d valorem* tax assessments are presumed to be correct." *In re AMP, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). This presumption is rebuttable. *Id.* at 563, 215 S.E.2d at 762. To rebut the presumption the taxpayer "must produce 'competent, material and substantial' evidence tend[ing] to show that: (1) Either the county tax supervisor used an *[a]rbitrary method* of valuation; or (2) the county tax supervisor used an *[i]llegal method* of valuation; AND (3) the assessment

*[s]ubstantially* exceeded the true value in money of the property." *Id.* (emphasis added) (internal citations omitted).

¶ 12    "A property valuation methodology is arbitrary and illegal if it fails to produce 'true value' as defined in N.C. Gen. Stat. § 105-283." *In re Matter of Appeal of Harris Teeter, LLC*, __ N.C. App. __, 845 S.E.2d 131, 139 (2020) (citation omitted).

¶ 13    "Once the taxpayer rebuts the initial presumption, the burden shifts back to the County which must then demonstrate that its methods produce true values." *In re Parkdale Mills*, 225 N.C. App. 713, 717, 741 S.E.2d 416, 420 (2013).

¶ 14    Here, the County argues that the Commission erred because its "findings of fact are insufficient to support its conclusions of law that Yadkin County illegally valued the [property] in a manner that resulted in a substantially inflated value." This assertion is incorrect. The Commission found that the taxpayer "rebutted the presumption of correctness of the assessment of the subject property by the County when the [taxpayer] offered competent, material, and substantial evidence that the County used an illegal appraisal method, and that the County's assessment of the subject property substantially exceeded its true value." Once the taxpayer rebutted the presumption, the burden then shifted to the County to prove that its methods demonstrated the true value of the property. The Commission found that the County failed to demonstrate its methods produced the true value of the property.

¶ 15    The taxpayer presented evidence from three expert witnesses who provided

evidence why the value of the property was lower than the County assessed. One of taxpayer's experts, Mr. Smith, conducted his own valuation of the property, using all three valuation methods accepted in North Carolina, to conclude that the value of the property was in fact $16,060,000, or $11,390,241 lower than the County's valuation of $27,450,241. Further, Mr. Smith testified that the discrepancy between the County's and Mr. Smith's valuations was a result of his valuation considering the functional obsolescence of the property. This evidence mirrors that offered in *Harris Teeter*, where the taxpayer offered an expert appraiser's testimony of his own individual appraisal that resulted in an appraised value of the property which was $7,771,313 lower than the County's appraised value. __ N.C. App. at __, 845 S.E.2d at 140. The Court found that this evidence was sufficient to rebut the presumption that the County's appraisal methodology produced true value, even though the County presented expert testimony to support its valuation. *Id.* The taxpayer's evidence is similarly sufficient here.

### C. Shifted Burden

Because the taxpayer rebutted the presumption of correctness of the County's valuation, the burden then shifted to the County to show its assessment produced the true value of the property. Once the burden has shifted, the critical inquiry is "whether the County's appraisal methodology 'is the proper means or methodology given the characteristics of the property under the appraisal to produce a true value

or fair market value.'" *In re Parkdale Mills*, 225 N.C. App. at 717, 741 S.E.2d at 420 (citations omitted). The County did not accomplish this in this case. While the County offered sales information as a comparison to the current property, it did not develop a sales comparison approach to produce an appraised value. Therefore, the Commission could not determine whether the sales were comparable to the subject property. The County's reconstructed cost estimate of the subject property included virtually no acknowledgment of its obsolescence and provided no explanation for how that factor affected the validity of the cost approach. Further, the County did not offer evidence that the cost approach was more appropriate in valuing this property than one of the other approaches. In fact, the County's expert, Mr. McCarthy, testified that neither the cost approach or sales comparison approach would be appropriate. Therefore, the Commission was reasonable in concluding that the cost approach should not be used as a test of reasonableness and that the sales approach is the most likely to produce the true value of the property.

The County's limited evidence failed to satisfy its burden to show that its appraisal methodology was proper or produced the true value of the subject property.

III. Conclusion

For the foregoing reasons, we affirm the Commission's Final Decision.


AFFIRMED.

Chief Judge STROUD and Judge INMAN concur.