IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-138

 No. COA20-300

 Filed 20 April 2021

 North Carolina Property Tax Commission, No. 17 PTC 0246

 IN THE MATTER OF THE APPEAL OF UNIFI MANUFACTURING INC., Appellee.

 Appeal by Yadkin County from the Final Decision of the North Carolina

 Property Tax Commission entered 21 November 2019 by Chairman Robert C. Hunter

 at the North Carolina Property Tax Commission. Heard in the Court of Appeals 26

 January 2021.

 J. Clark Fischer, Attorney for Appellant Yadkin County.

 Collier R. Marsh, Attorney for the Appellee.

 GORE, Judge.

¶1 Yadkin County (“the County”) appeals from the final Decision of the North

 Carolina Property Tax Commission (“the Commission”) reversing the County’s 2017

 ad valorem property tax valuation of Unifi Manufacturing, Inc.’s (“taxpayer”) textile

 manufacturing facility.

 I. Background

¶2 This case arises from the County’s 2017 ad valorem tax assessment of the
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

 taxpayer’s textile manufacturing facility. In disagreement with the County’s

 assessment, taxpayer filed a Notice of Appeal and Application for Hearing with the

 North Carolina Property Tax Commission. The Commission heard the appeal on its

 merits at a hearing on 1 October 2019.

¶3 The taxpayer’s evidence before the Commission included the following. M.

 Scott Smith, an expert in real property appraisal, testified that he conducted the

 valuation of the property using three approaches to value (cost, sales comparison, and

 income) and reconciled all three approaches to arrive at his opinion of value of

 $16,060,000 (the same value as produced by the sales comparison approach) and that

 the net value of the property was $14.75 per square foot. Mr. Smith testified that the

 best use of the property would be continued industrial use and that the property

 suffered from significant obsolescence, in part because a substantial square footage

 of the property was a tower (the “F1 tower”) custom built to house older technology

 that is no longer in use.

¶4 Douglas M. Faris, an expert in real estate brokerage, testified that in his

 opinion the subject property would be a challenge to resell because the property would

 be difficult to adapt to an alternate use; due to factors such as the F1 tower being

 “useless” in a different manufacturing operation and the property being much larger

 than most manufacturing operations require. Mr. Faris testified that the layout and

 other characteristics of the facility made it inappropriate for alternative uses, such
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

 as warehouse or office space. In Mr. Faris’s opinion a valuation of $14-$15 per square

 foot would be appropriate.

¶5 Sohan Mangaldas, an expert in textile global markets, testified that there has

 been a decline in U.S. based production of the polyester yarn produced at the facility

 and that there would be “no demand to purchase” the subject property for the purpose

 of continuing its current operation.

¶6 The County’s evidence included testimony from Ronald S. McCarthy, an expert

 in ad valorem appraisal of industrial property, who conducted the appraisal of

 taxpayer’s property. Mr. McCarthy testified that, in his opinion, the cost approach

 and the sales comparison approach would be most appropriate for valuation of the

 subject property. Mr. McCarthy further testified that he only relied on the cost

 approach; he had not prepared a sales comparison approach or an income approach

 in developing his appraisal of the subject property. Mr. McCarthy’s report listed

 various features for the property and discussed how each feature contributed to the

 County’s total value of $27,450,241. To support its valuation the County offered five

 sales as comparable to the subject property; the average sales price for these

 properties was $31.04 per square foot. Mr. Faris, one of the taxpayer’s witnesses,

 testified that he was personally involved in each sale offered by the County, and that

 none of the properties was comparable to the subject property.

¶7 The Commission found that, of the three valuation approaches recognized in
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

 North Carolina, the income approach is the least relevant here because the subject

 property is not income-producing. Additionally, the Commission concluded the cost

 approach is more challenging to develop accurately, and thus, should only be used as

 a test of reasonableness for a value developed by one of the other methods. The

 Commission found that the sales comparison approach is the most likely to produce

 a true value for the subject property.

¶8 The Commission recognized that a county’s ad valorem tax assessment is

 presumptively correct. However, the Commission found that the taxpayer rebutted

 the presumption by offering competent, material, and substantial evidence that the

 County used an illegal appraisal method, and that the County’s assessment of the

 subject property substantially exceeded its true value. Further, the Commission

 found that the County was not able to demonstrate that its method in appraising the

 subject property produced true value because it did not sufficiently explain how any

 of the three approaches to value supported the County’s tax value. As a result, the

 Commission ordered that the 2017 tax value of the subject property be changed to

 $16,060,000.

 II. Discussion

¶9 The County challenges the Commission’s Final Decision asserting that the

 Commission failed to properly apply the presumption of correctness and that the

 whole record does not support the conclusion that the County’s assessment of the
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

 property was illegal. For the reasons discussed below, we disagree.

 A. Standard of Review

¶ 10 On appeal a decision of the Property Tax Commission is reviewed under the

 “whole record” test. In re McElwee, 304 N.C. 68, 87, 283 S.E.2d 115, 127 (1981). “The

 Court must decide all relevant questions of law de novo, and review the findings,

 conclusions and decision to determine if they are affected by error or are unsupported

 ‘by competent, material and substantial evidence in view of the entire record.’” In re

 Appeal of Parsons, 123 N.C. App. 32, 38–39, 472 S.E.2d 182, 187 (1996) (quoting In

 re Appeal of Perry-Griffin Foundation, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218

 (1993)). “The ‘whole record’ test is not a tool of judicial intrusion; instead, it merely

 gives a reviewing court the capability to determine whether an administrative

 decision has a rational basis in the evidence.” McElwee at 87, 283 S.E.2d at 127

 (quoting In re Rogers, 297 N.C. 48, 253 S.E.2d 912 (1979)).

 B. Presumption of Correctness

¶ 11 “[A]d valorem tax assessments are presumed to be correct.” In re AMP, Inc.,

 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). This presumption is rebuttable. Id. at

 563, 215 S.E.2d at 762. To rebut the presumption the taxpayer “must produce

 ‘competent, material and substantial’ evidence tend[ing] to show that: (1) Either the

 county tax supervisor used an [a]rbitrary method of valuation; or (2) the county tax

 supervisor used an [i]llegal method of valuation; AND (3) the assessment
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

 [s]ubstantially exceeded the true value in money of the property.” Id. (emphasis

 added) (internal citations omitted).

¶ 12 “A property valuation methodology is arbitrary and illegal if it fails to produce

 ‘true value’ as defined in N.C. Gen. Stat. § 105-283.” In re Matter of Appeal of Harris

 Teeter, LLC, __ N.C. App. __, 845 S.E.2d 131, 139 (2020) (citation omitted).

¶ 13 “Once the taxpayer rebuts the initial presumption, the burden shifts back to

 the County which must then demonstrate that its methods produce true values.” In

 re Parkdale Mills, 225 N.C. App. 713, 717, 741 S.E.2d 416, 420 (2013).

¶ 14 Here, the County argues that the Commission erred because its “findings of

 fact are insufficient to support its conclusions of law that Yadkin County illegally

 valued the [property] in a manner that resulted in a substantially inflated value.”

 This assertion is incorrect. The Commission found that the taxpayer “rebutted the

 presumption of correctness of the assessment of the subject property by the County

 when the [taxpayer] offered competent, material, and substantial evidence that the

 County used an illegal appraisal method, and that the County’s assessment of the

 subject property substantially exceeded its true value.” Once the taxpayer rebutted

 the presumption, the burden then shifted to the County to prove that its methods

 demonstrated the true value of the property. The Commission found that the County

 failed to demonstrate its methods produced the true value of the property.

¶ 15 The taxpayer presented evidence from three expert witnesses who provided
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

 evidence why the value of the property was lower than the County assessed. One of

 taxpayer’s experts, Mr. Smith, conducted his own valuation of the property, using all

 three valuation methods accepted in North Carolina, to conclude that the value of the

 property was in fact $16,060,000, or $11,390,241 lower than the County’s valuation

 of $27,450,241. Further, Mr. Smith testified that the discrepancy between the

 County’s and Mr. Smith’s valuations was a result of his valuation considering the

 functional obsolescence of the property. This evidence mirrors that offered in Harris

 Teeter, where the taxpayer offered an expert appraiser’s testimony of his own

 individual appraisal that resulted in an appraised value of the property which was

 $7,771,313 lower than the County’s appraised value. __ N.C. App. at __, 845 S.E.2d

 at 140. The Court found that this evidence was sufficient to rebut the presumption

 that the County’s appraisal methodology produced true value, even though the

 County presented expert testimony to support its valuation. Id. The taxpayer’s

 evidence is similarly sufficient here.

 C. Shifted Burden

¶ 16 Because the taxpayer rebutted the presumption of correctness of the County’s

 valuation, the burden then shifted to the County to show its assessment produced the

 true value of the property. Once the burden has shifted, the critical inquiry is

 “whether the County’s appraisal methodology ‘is the proper means or methodology

 given the characteristics of the property under the appraisal to produce a true value
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

 or fair market value.’” In re Parkdale Mills, 225 N.C. App. at 717, 741 S.E.2d at 420

 (citations omitted). The County did not accomplish this in this case. While the County

 offered sales information as a comparison to the current property, it did not develop

 a sales comparison approach to produce an appraised value. Therefore, the

 Commission could not determine whether the sales were comparable to the subject

 property. The County’s reconstructed cost estimate of the subject property included

 virtually no acknowledgment of its obsolescence and provided no explanation for how

 that factor affected the validity of the cost approach. Further, the County did not offer

 evidence that the cost approach was more appropriate in valuing this property than

 one of the other approaches. In fact, the County’s expert, Mr. McCarthy, testified that

 neither the cost approach or sales comparison approach would be appropriate.

 Therefore, the Commission was reasonable in concluding that the cost approach

 should not be used as a test of reasonableness and that the sales approach is the most

 likely to produce the true value of the property.

¶ 17 The County’s limited evidence failed to satisfy its burden to show that its

 appraisal methodology was proper or produced the true value of the subject property.

 III. Conclusion

¶ 18 For the foregoing reasons, we affirm the Commission’s Final Decision.

 AFFIRMED.
 IN RE UNIFI MFG. INC.

 2021-NCCOA-138

 Opinion of the Court

Chief Judge STROUD and Judge INMAN concur.