IN THE MATTER OF: APPEAL OF: OCEAN ISLE PALMS LLC from the decision of the Brunswick County Board of Equalization and Review concerning the valuation and taxation of real property for tax year 2010

No. 128A12

(Filed 25 January 2013)

**Taxation – real property – county reassessment of value – improper reappraisal – permitted only in specified years**

       The North Carolina Property Tax Commission did not err by entering judgment in favor of Ocean Isle Palms LLC (Ocean Isle) arising from Brunswick County's (County) reassessment of the tax value of Ocean Isle's real property. Although the County argued that it was merely correcting an error in an existing appraisal that arose from a misapplication of its 2007 schedule of values of land in the county, its 2008 action constituted an improper reappraisal. 2008 was not a year in which a general reappraisal was permitted. A North Carolina county may appraise property for taxation purposes only in specified years.

       Justices HUDSON and BEASLEY did not participate in the consideration or decision of this case.

       Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 723 S.E.2d 543 (2012), reversing an order entered on 24 June 2011 by the North Carolina Property Tax Commission and remanding for further proceedings. Heard in the Supreme Court on 15 October 2012.

*Nelson Mullins Riley & Scarborough LLP, by Charles H. Mercer, Jr. and Reed J. Hollander; and Elaine R. Jordan, General Counsel, The Coastal Companies, for taxpayer-appellant.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker and Jamie Schwedler, for respondent-appellee.*

EDMUNDS, Justice.

A North Carolina county may appraise property for taxation purposes only in specified years. Brunswick County ("the County") conducted such an authorized appraisal of all property in the County in 2007. In this case, we consider whether the County acted lawfully when it reassessed the tax value of real property belonging to taxpayer Ocean Isle Palms LLC ("Ocean Isle") in 2008, which was not a statutorily designated year for setting property values for tax purposes. Although the County argues that it was merely correcting an error in an existing appraisal that arose from a misapplication of its 2007 schedule of values of land in the County, we conclude that the County's 2008 action constituted an improper reappraisal. Because 2008 was not a year in which a general reappraisal was permitted, the North Carolina Property Tax Commission correctly entered judgment in favor of Ocean Isle. Accordingly, we reverse the decision of the Court of Appeals reversing the Commission's decision.

We begin our analysis by considering the statutes pertinent to the valuation of real property and the County's application of those statutes. To ensure accurate and uniform taxation of real property across North Carolina, the General Assembly has established "Standards for Appraisal and Assessment" of property that each county must implement, N.C.G.S. §§ 105-283, -284 (2011), along with a framework setting out the "Time for Listing and Appraising Property for Taxation," *id.* §§ 105-285 to -287 (2011). Under these statutory standards, all real property must be

appraised or valued "at its true value in money." *Id.* § 105-283. "True value" is

defined as "market value," the price

> at which the property would change hands between a
> willing and financially able buyer and a willing seller,
> neither being under any compulsion to buy or to sell and
> both having reasonable knowledge of all the uses to which
> the property is adapted and for which it is capable of
> being used.

*Id.*

The General Assembly required each county to conduct an initial valuation of

all real properties within its borders, followed by subsequent revaluations of the

property, in accordance with a schedule set by statute. N.C.G.S. § 105-286. During

a year in which a revaluation is permitted, and only during such years, every

property in a county is reappraised and its current taxable value established,

reflecting any changes that may have occurred since the last revaluation to ensure

that the new true value is accurate. *Id.*; *see also In re Allred*, 351 N.C. 1, 5-7, 519

S.E.2d 52, 55-56 (1999). Because of the need for consistency in these reappraisals,

each county must develop and review uniform schedules of values, standards, and

rules that detail the methodology appraisers will apply when determining a

property's true value. N.C.G.S. § 105-317 (2011). These schedules must be revised

by a county tax assessor and approved by a county board of commissioners before

the arrival of each revaluation year. *Id.* § 105-317(b), (c). Any reappraisals must be

complete as of the first day of January in a reappraisal year, when the current true

value of all real property in a county is set. *Id.* § 105-285(d). These newly set values are carried forward until the next revaluation year unless specified circumstances arise that justify reassessment in an intervening year, such as the need to correct a clerical or mathematical error. *Id.* § 105-287(a).

Although revaluations are required every eight years, a county may elect to increase their frequency. *Id.* § 105-286. The record indicates that Brunswick County conducted revaluations in 1999, 2003, and 2007. For each of these revaluations, Brunswick County developed and approved a schedule of values setting out the methodologies its appraisers could apply. Under one methodology, known as the "sales comparison" or "lot price" method, true value is calculated using recent sales price data for similarly situated parcels. However, because available sales data predominantly captured the value of developed parcels sold with completed infrastructure, the sales comparison method in its pure form failed accurately to reflect the true value of an undeveloped parcel.

To account for the difference in value between developed and undeveloped parcels, the County approved, and appraisers applied, a "condition factor" to the sales comparison method. The condition factor is an adjustment that allowed appraisers to account for the lower true value of undeveloped property. To derive the true value for an undeveloped parcel, the appraiser would first use the sales comparison method to determine a base value for the parcel. The appraiser would then calculate the condition factor, in the form of a decimal fraction, reflecting the

property's degree of development. The base value of the property in question would be multiplied by the condition factor, yielding a lower amount that represented the value of the property in its undeveloped state. The condition factor (shorn of its decimal and treated as a whole number) would be entered on the property's tax card to adjust the value of the parcel to compensate for its undeveloped state. For example, a property without water, sewer, other utilities, or paved roads could be assigned a condition factor of .20, which would be entered on the property's tax card as "20." The sales comparison value of a developed but otherwise similarly situated parcel would be multiplied by .20, yielding a true value for the undeveloped lot of 20% of the base value of comparable developed property. Appraisers generally assigned a condition factor of 20 when vacant property in an area intended for residential use lacked water and sewer services, paved roads or curbing, or other amenities. As infrastructure was added to such property, the condition factor would increase, reflecting the rising true value of the property. This condition factor method had been used in Brunswick County since "at least since 1976" and was applied in a manner consistent with past practices during the 2007 revaluation.

To prepare for the 2007 revaluation, which was completed in February of that year, the County began appraising property eighteen months earlier. The Brunswick County Board of Commissioners also began reviewing the 2007 schedule of values and adopted it in November 2006. This 2007 schedule was compiled after

reviewing schedules that had been approved for the revaluation years 1999 and 2003.

Between 2005 and 2006, the number of undeveloped parcels sold in the County rose, increasing the sales data available for assessing the true value of such parcels. Even so, as in past years, the schedule adopted by the Board contained no details discussing the propriety of applying the condition factor, which was neither required nor prohibited in any particular situation. Instead, the schedule's text only described the numerical format of the condition factor and explained how the factor entered into the calculation of the total adjusted unit price. The schedule's text further stated that "[t]here exists no 'all encompassing' set of rules" to ensure accuracy and that ultimately, the County relies on appraisers' "experience and expertise . . . as well as their personal judgment" when applying the schedule.

During the 2007 revaluation, the appraisal supervisor was Marlon Long, who had worked as an appraiser in the County since 1996. The primary appraiser for vacant parcels, Jim Callahan, had worked as an appraiser for the County for eight or nine years. Both men had used the condition factor method to determine the true value of undeveloped property throughout their employment with the County. Callahan visited the undeveloped lots, observed the degree to which development had progressed, determined the condition factor in a manner consistent with its application in the revaluation years 1999 and 2003, and assigned a condition factor based on his observations. The County tax office was aware that condition factors

IN RE OCEAN ISLE PALMS LLC

*Opinion of the Court*

ranging from 20% to 40% were being applied to unfinished properties and that the 2007 schedule of values was adopted in 2006 with an intention of maintaining consistency with this appraisal practice.

Against this background, we turn now to the property at issue in this action. Callahan appraised each of Ocean Isle's one hundred nine undeveloped parcels. Except for areas designated for common use, he assigned each parcel a condition factor of .20, causing the true values of those properties to be set at 20% of the base values of comparable developed properties. This approach to the appraisal of Ocean Isle's undeveloped lots resulted in the assignment of true values for the 2007 revaluation ranging from $45,000 to $60,000 per parcel.

Following the conclusion of the revaluation, Callahan continued to apply the condition factor in assessments of property value through the remainder of 2007. However, a newly appointed County tax assessor ordered that, effective 1 January 2008, a nonrevaluation year, the condition factor be removed from all tax cards and the value of all undeveloped properties be reset to 100% of their assigned base value. As a result, for the year 2008, Ocean Isle's parcels were reassessed at taxable values ranging from $191,250 to $718,630 per parcel.

Ocean Isle did not challenge the reassessment, but promptly approached the County and, after discussion between the parties, the tax values of the undeveloped parcels were decreased slightly. These values were carried forward for tax years 2009 and 2010. However, in 2010 Ocean Isle disputed the 2010 tax values before

the Brunswick County Board of Equalization and Review, arguing that the values were unlawful because they were based on an invalid reassessment. Specifically, Ocean Isle argued that 2008 was not a year in which a general reappraisal was authorized and that the County used improper, arbitrary, and illegal methods while failing to follow the applicable statutes.

The County Board of Equalization and Review heard Ocean Isle's challenge and declined to change the valuations. On 26 July 2010, Ocean Isle appealed the Board's decision to the North Carolina Property Tax Commission ("the Commission"), where it moved for summary judgment, arguing that the 2008 reassessments were not permissible because they did not occur in a designated reappraisal year, in violation of N.C.G.S. §§ 105-286(c) and 105-287(a).[1] The County opposed Ocean Isle's summary judgment motion, arguing that the reassessment was proper under section 105-287(a)(2), which permits reappraisals in off years to "[c]orrect an appraisal error resulting from a misapplication of the schedules, standards, and rules used in the county's most recent general reappraisal." According to the County, application of the condition factor to Ocean Isle's undeveloped lots in 2007 constituted a misapplication of the schedule of

---

[1] When the challenged reassessment took place in 2008, section 105-286(c) addressed the value to be assigned to real property during a year when that property was not subject to reappraisal and provided in pertinent part that "[i]n years in which real property within a county is not subject to appraisal or reappraisal under subsections (a) or (b), above, or under G.S. 105-287, it shall be listed at the value assigned when last appraised under this section or under G.S. 105-287." N.C.G.S. § 105-286(c) (repealed 2009) (codified as amended at N.C.G.S. § 105-287(a)).

values, thereby justifying changing the appraised value of property in a nonreassessment year pursuant to the statute.

On 24 June 2011, the Commission found that the 2007 schedule of values had not been misapplied. As a result, the Commission determined that the 2008 revaluation was unlawful and the values then set had not been carried forward legally in 2009 and 2010. The Commission granted Ocean Isle's summary judgment motion and ordered the County to value the parcels as of 1 January 2010 using the same condition factor adjustment applied for the 2007 revaluation.

The County appealed, arguing among other issues that the Commission erred in granting summary judgment for Ocean Isle because genuine issues of material fact exist as to whether the schedule of values was misapplied in 2007 and whether the 2008 assessment constituted a lawful correction. On 21 February 2012, a divided panel of the Court of Appeals reversed the Commission's order. *In re Ocean Isle Palms*, ___ N.C. App. at ___, 723 S.E.2d at 551.

The majority found that a genuine issue of material fact existed as to whether a misapplication of the schedule had occurred under section 105-287(a)(2). *Id.* at ___, 723 S.E.2d at 550. Although the panel unanimously held that application of a condition factor was not itself erroneous, the majority focused on allegations that the factor had not been applied uniformly. *Id.* at ___, 723 S.E.2d at 550. The majority concluded that conflicting evidence had been presented as to whether application of the condition factor in 2007 had resulted in uniform, consistent, and

accurate assessments of the true value of the lots. *Id.* at ___, 723 S.E.2d at 550. Accordingly, the majority reversed and remanded the Commission's order for further proceedings to determine whether the procedures used by the County, as established in the schedule of values, had been "applied in a uniform and equitable manner," *id.* at ___, 723 S.E.2d at 551, or whether the procedures had resulted "in lots being valued far below or far above their true values and in a manner inconsistent with the valuation of other lots in the same county," *id.* at ___, 723 S.E.2d at 550-51. The majority concluded that inaccurate and inconsistent application of a condition factor "*is* a misapplication of the schedule." *Id.* at ___, 723 S.E.2d at 551.

The dissenting judge disagreed. Observing that the County had used the condition factor method for decades and that its application had always required appraisers to use their sound discretion, *id.* at ___, 723 S.E.2d at 551 (Beasley, J., concurring in part and dissenting in part), the dissenting judge stated that she did "not believe there are any genuine issues of material fact regarding whether the County's 2007 Schedule of Values was misapplied" during the 2007 revaluation, *id.* at ___, 723 S.E.2d at 551. Instead, the dissent discerned that the real dispute between the parties was whether the condition factor could be applied at all. *Id.* at ___, 723 S.E.2d at 551. The dissenting judge believed that the County's action in 2008 was not simply a correction of a misapplication of the 2007 schedule of values but instead constituted "a new standard appraisal practice." *Id.* at ___, 723 S.E.2d

at 551. Because the implementation of a new standard appraisal practice is not one of the circumstances listed in section 105.287(a) allowing an off-year change of an appraised value, the dissent would have affirmed the Commission's decision. *Id.* at ___, 723 S.E.2d at 551. Ocean Isle filed its notice of appeal based on the dissenting opinion.

Before us, the County argues that summary judgment was improper because genuine issues of material fact exist regarding whether its schedule of values was misapplied in 2007, permitting the 2008 reassessment. Our review of the record indicates that no such disputed issues of fact exist and that summary judgment in favor of Ocean Isle was proper.

The County contends that more information was available by 2008 as to the true value of undeveloped lots because Ocean Isle had sold a number of undeveloped lots between 5 May 2006 and the revaluation date of 1 January 2007, and the revenue stamps on the deeds to those parcels indicated an average price significantly higher than the value for similar parcels derived in the 2007 revaluation. In addition, the County contends that some undeveloped lots in the County located in subdivisions other than Ocean Isle were assessed in 2007 without application of "an undeveloped lot discount," resulting in inconsistent valuations of similar parcels. As a result, the County argues, the condition factor was not uniformly applied and, when applied, did not yield an accurate value. Thus, according to the County, the off-year reassessment of Ocean Isle's property was

permissible because it "[c]orrect[ed] an appraisal error resulting from a misapplication of the schedules, standards, and rules used in the county's most recent general reappraisal." N.C.G.S. § 105-287(a)(2).

Although the County attempts to frame its actions in 2008 as the correction of an error, we find that the County instead instituted a new revaluation system. According to the record, shortly after the 2007 revaluation, the County's tax assessor ordered appraisers to stop using the condition factor method of appraisal and to reset the value of the parcels at issue here without any consideration of, or adjustment for, the degree to which the property had been developed. In other words, the County's response to the alleged shortcomings of the 2007 appraisals of Ocean Isle's lots was not to correct the application of the condition factor to reflect new information but to throw out the condition factor altogether. Consequently, the County's reaction to the perceived erroneous revaluations cannot be seen as a mere correction of a methodology used with approval in the past. Instead, the County imposed a revised system of valuation. We must now consider whether doing so in an off year violated the relevant statutes, a question of law.

Property values are not set in concrete. The statutes allow a county discretion to revise its standards, rules, and schedules to ensure that appraisals conducted in revaluation years reflect the true value of real property in light of changing conditions or available data. Here, if the County did not want the condition factor method to remain in use in 2007, its remedy was to revise the

schedule of values for that revaluation year to reflect a change from its previously approved approach to undeveloped property appraisal. However, when no such timely change was made, the County may not retroactively label as error an historically approved methodology endorsed by the schedule.

The County also argues that the 2007 revaluation involved a correctable error because the condition factor, though applied to Ocean Isle's parcels, was not applied to all undeveloped properties in the County, resulting in a lack of uniformity. However, this argument does not affect the valuation of Ocean Isle's property, where the only question presented was whether appraisers could apply the condition factor at all. The Court of Appeals unanimously found no error in the County's decision to allow appraisers to use their discretion to decide whether or not to apply the condition factor during the 2007 revaluation, as had been done with the County's approval in past revaluations. Accordingly, if the County seeks to limit appraisers' use of their discretion in future revaluations, it may do so only prospectively.

Based on the record, we find that no misapplication of Brunswick County's schedule of values occurred during the 2007 revaluation. Consequently, the reassessment conducted in the nonreappraisal year 2008 violated section 105-287(a)(2), and the alteration of the taxable value of Ocean Isle's property under the 2008 reassessment was unlawful. Therefore, the Commission properly granted

summary judgment in favor of Ocean Isle.  We reverse the decision of the Court of Appeals.

REVERSED.

Justices HUDSON and BEASLEY did not participate in the consideration or decision of this case.