IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-125

Filed: 7 January 2020

Property Tax Commission, Nos. 17 PTC 0146-48

IN THE MATTER OF THE APPEAL OF: LOWE'S HOME CENTERS, LLC

Appeal by Union County from Final Decision entered 24 October 2018 of the Property Tax Commission sitting as the State Board of Equalization and Review. Heard in the Court of Appeals 5 June 2019.

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker and Collier R. Marsh, and Perry, Bundy, Plyler & Long, L.L.P., by Terry Sholar and Ashley McBride, for Union County-appellant.*

*Bell, Davis & Pitt, P.A., by John A. Cocklereece and Justin M. Hardy, for Lowe's Home Centers, LLC-appellee.*

MURPHY, Judge.

Our statutes bar county boards of equalization and review from changing the appraisal value of—i.e. revaluating—real property in years in which general reappraisal is not made, except under certain specifically defined circumstances. One such reason for revaluation is to "[c]orrect an appraisal error resulting from a misapplication of the schedules, standards, and rules used in the county's most recent general reappraisal." N.C.G.S. § 105-287(a)(2) (2017). The only genuine issue in this case is whether the Union County Board of Equalization and Review's revaluation of Lowe's property values in a non-reappraisal year was, in fact, for the purpose of

correcting a misapplication of the schedule of values. The revaluation did not correct a misapplication of the schedule of values and was not authorized under our statutes. We affirm the decision of the Property Tax Commission below in favor of Lowe's.

## **BACKGROUND**

At the beginning of 2015, the Union County Board of Equalization and Review ("the Board") revaluated three properties belonging to Appellee Lowe's Home Centers, LLC ("Lowe's") during a countywide revaluation pursuant to N.C.G.S. § 105-286(a)(1). During the revaluation process, property values were appraised according to the "Cost Approach," one of three assessment methods allowed by Union County's 2015 Uniform Schedule of Values, Standards, and Rules ("Schedule of Values") to assess market price:

1. Cost Approach: (also known as Depreciated Replacement Cost). This approach is based on the proposition that the informed purchaser would not pay more than the cost of producing a substitute property with the same use as the subject property. This approach is particularly applicable when the property being appraised is utilized at its highest and best use. It also applies when unique or specialized improvements are located on a site for which there exist no comparable properties in the market.

2. Market Data Approach: (also known as the Comparative Approach). This appraisal method is used to estimate the value of real property through a market search to ascertain the selling prices of similar properties. In this process, the appraiser compares the subject property to those which have sold, and

estimates the value of the property by using those selling prices as a comparison.

3. <u>Income Approach:</u> [Not discussed in this case.]

The Board evaluated the three properties owned in fee simple by Lowe's according to the Cost Approach at $12,362,100.00, $9,204,600.00, and $14,667,400.00, respectively, and reported the proposed values to Lowe's. This was the first evaluation relevant to this case, and we will refer to it hereinafter as "the Initial Evaluation."

Later that same year, Lowe's properly appealed the evaluations with the assistance of an appraiser. Utilizing the Market Data Approach, it submitted documentation evincing that the properties were worth approximately half as much as the Board's initial assessment suggested—$6,492,000.00, $4,386,800.00, and $6,555,100.00, respectively. Lowe's presented comparisons of properties ostensibly similar to those owned by Lowe's, all of which were represented as "big box" retail properties owned in fee simple. Satisfied that the properties owned by Lowe's were, in fact, analogous to those in the appeal, the Board accepted the appeal at "face value" and revaluated the listed values to exactly those proposed by Lowe's ("the 2015 Revaluation"). From 8 April 2015 to 7 April 2017, the three properties belonging to Lowe's were taxed according to these amended assessed values.

In 2017, a non-revaluation year under N.C.G.S. § 105-286(a)(1), the Board discovered what it deemed to be an error in the Lowe's property revaluations. During

a hearing in which a separate retailer appealed its property values by comparison with the Lowe's properties, the Board recognized that the values assessed according to the 2015 Revaluation were abnormally low. In a five-minute hearing on 4 April 2017, the Board voted to restore the three Lowe's properties to their values under the Initial Evaluation—calculated according to the Cost Approach—as a matter of equity ("the 2017 Revaluation"), notifying Lowe's of its decision several days later.

As the basis for the unseasonable 2017 Revaluation, the Board cited N.C.G.S. § 105-322(g)(1)(c), which it alleged "permits a change in value of any property that, in the board's opinion, has been listed and appraised at a figure that is below or above" true market value. It was later discovered that Lowe's had compared its properties in the appeal which led to the 2015 Revaluation with properties subject to deed restrictions severely impairing their market value, while the Lowe's properties themselves had no such restrictions.

After unsuccessfully challenging the 2017 Revaluation before the Board, Lowe's appealed the decision to the Property Tax Commission sitting as the State Board of Equalization and Review ("the Commission"). At the hearing's conclusion, the Commission found that the Board did not have the requisite statutory authority to adjust the values of the properties as it did in the 2017 Revaluation. The Commission concluded N.C.G.S. § 105-287(g)(2) only authorizes such an adjustment if the Board was correcting an error arising from a misapplication of the Schedule of

Values. Since the Board took Lowe's evidence at face value and "assigned exactly the value it intended on the properties," the Commission held the 2015 Revaluation did not constitute a misapplication of the Schedule of Values. As such, the Commission concluded the 2017 Revaluation was improper and ordered the Board to restore the accepted appraised values set out in the 2015 Revaluation. Union County timely appeals.

## ANALYSIS

Union County argues the Commission's order was erroneous in two ways: first, in concluding there was no evidence that the Schedule of Values was misapplied in the 2015 Revaluation; and, second, in concluding the Board was not statutorily authorized to adjust the Lowe's properties' values in the 2017 Revaluation. The core question on appeal, which underlies both of Union County's arguments, is whether the Board's use of the Market Data Approach to compare the Lowe's properties owned in fee simple to deed-restricted properties in the 2015 Revaluation constitutes a misapplication of the Schedule of Values. If the Board's 2015 Revaluation was a "misapplication" of the Schedule of Values, the 2017 Revaluation was a proper use of the Board's statutory authority to correct misapplications. If not, the Commission's Order must be affirmed because the Board acted outside its statutory authority to change the assessed values.

N.C.G.S. § 105-322(g)(1)(c) prevents the Board from adjusting the appraised value of real property "except in accordance with the terms of [N.C.]G.S. 105-286 [governing revaluation-year adjustments] and 105-287." N.C.G.S. § 105-322(g)(1)(c) (2017). N.C.G.S. § 105-287 states, in relevant part:

> (a) In a year in which a general reappraisal of real property in the county is not made under G.S. 105-286, the property shall be listed at the value assigned when last appraised unless the value is changed in accordance with this section. The assessor shall increase or decrease the appraised value of real property, as determined under G.S. 105-286, to recognize a change in the property's value resulting from one or more of the following reasons:
>
> . . .
>
> (2) Correct an appraisal error resulting from a misapplication of the schedules, standards, and rules used in the county's most recent general reappraisal.

N.C.G.S. § 105-287(a)(2) (2017).

Union County contends the record before the Commission contained ample evidence that the Schedule of Values was misapplied in the 2015 Revaluation; namely that, in 2017, four witnesses attested to the variance between the three properties at issue and the properties Lowe's submitted for comparison under the Market Data Approach. However, the true issue on appeal is not whether evidence of the variance existed but whether that variance between the Initial Evaluation and the 2015 Revaluation can be properly characterized under the statute as a "misapplication" of the Schedule of Values. Again, if the 2017 Revaluation was not to correct an error

resulting from a "misapplication" in the 2015 Revaluation, the Board acted beyond its statutory authority by revaluating the appraised value of Lowe's properties. If, however, it was correcting a misapplication from the 2015 Revaluation, the 2017 Revaluation was made pursuant to the Board's statutory authority and the Commission erred in reaching a conclusion to the contrary. We hold the Board did not misapply the Schedule of Values in entering the 2015 Revaluation and affirm the Commission's decision.

The question of whether the 2015 Revaluation constituted a misapplication is an issue of law, which we review de novo. *In re Westmoreland-LG & E Partners North Carolina,* 174 N.C. App. 692, 696, 622 S.E.2d 124, 128 (2005) ("Appellate courts review all questions of law *de novo* and apply the 'whole record' test where the evidence is conflicting . . . .").

Union County advances two arguments as to why the Schedule of Values was "misapplied" in the 2015 Revaluation. First, because the properties used for comparison were deed-restricted such that they could not be used optimally as large retail stores, the Lowe's properties were not "similar" to the comparison properties under the Market Value Approach in the Schedule of Values. Second, the Commission improperly characterized the 2015 Revaluation as something other than a "misapplication," when it is most accurately classified as a misapplication arising from incorrect information.

In contrast, Lowe's argues at the time of the 2017 Revaluation "the County and Board were not aware of the [N.C.G.S. §] 105-287 limitation." Lowe's concludes, "[g]iven that the Board did not even discuss Section 105-287 or the Union County [S]chedule of [V]alues, the Commission properly concluded that the Board did not intend to 'correct an appraisal error resulting from a misapplication' of the [S]chedule of [V]alues" at the time of the 2017 Revaluation.

Our caselaw on this issue begins and ends with one case, *In re Ocean Isle Palms LLC*, 366 N.C. 351, 749 S.E.2d 439 (2013), in which our Supreme Court examined whether Brunswick County had corrected a misapplication of the schedule of values when it revaluated properties in a non-revaluation year to reflect new information. *Id.* at 358, 749 S.E.2d at 443. The new information before the board in *Ocean Isle* was twofold: (A) previously unknown market data indicating the properties in question were more valuable than their revaluation-year assessments indicated, and (B) information that some of the market data used during the previous revaluation year had been inaccurate. *Id.* Based on this information, Brunswick County concluded that the "condition factor" test by which it had previously evaluated the properties no longer applied and changed the property values accordingly. *Id.*

Our Supreme Court reasoned that, despite Brunswick County's assertions to the contrary, the revaluation was not implemented to correct a misapplication of the Schedule of Values, but to apply a different standard altogether—a change that could

only take place prospectively, not retroactively, under N.C.G.S. 105-287. *Id.* at 359, 749 S.E.2d at 444. Accordingly, the revaluation was not statutorily authorized. *Id.*

We are guided by *Ocean Isle* in addressing Union County's arguments on appeal. Brunswick County's basic contention in *Ocean Isle* was that, had it known during the evaluation year the information it learned later, it would have decided on different values for the properties. Thus, the schedule of values was misapplied. Union County's argument likewise suggests that the Board would not have relied upon the comparison properties submitted by Lowe's if it had had all the relevant information in 2015. There is no way to substantively differentiate this argument from that which our Supreme Court rejected in *Ocean Isle*. Here, as in *Ocean Isle*, the 2017 Revaluation was not implemented to correct a misapplication, but to retroactively adjust the property values to reflect newly discovered information.

Union County's only argument distinguishing this case from *Ocean Isle* is that, while Brunswick County had instituted a new revaluation system altogether in *Ocean Isle*, the Board in this case merely reinstated an evaluation system already used in the Initial Evaluation. In other words, it argues that where Brunswick County was attempting to impose a new standard onto a previous year, Union County simply corrected its previous evaluation consistent with its existing standards. This argument largely ignores the substance of the *Ocean Isle* decision and does not render the Commission's decision erroneous.

The manner in which the standard used in *Ocean Isle* differed from that of the foregoing revaluation year is the same manner in which the standard used in the 2017 Revaluation differs from that used in the 2015 Revaluation—the Board's understanding of the factual underpinnings changed and that resulted in a different assessment. Brunswick County's standard in *Ocean Isle* differed from that in the revaluation year because, with new information about the properties at issue and the surrounding market, its assessment of the properties' values changed. *Id.* at 358, 749 S.E.2d at 443. However, because there was no error in the application of its schedule of values to the facts as they were understood during the previous revaluation year, there was no misapplication. Consequently, Brunswick County lacked the statutory authority to adjust the property values. The same is true here.

Furthermore, our result is consistent with a plain reading of "misapplication." In common usage paralleling its use in N.C.G.S. § 105-287(a)(2), "apply" must take both a direct and an indirect object. The Schedule of Values was not just "applied," but applied to a set of facts as understood by the Board. For an assessment of a property's value to constitute a "misapplication of the schedules, standards, and rules," an error must have taken place in the manner the Schedule of Values was applied, not in the Board's apprehension of background facts. N.C.G.S. § 105-287(a)(2). The Schedule of Values here did not define "similar properties;" rather, it left the similarity of comparison properties to the discretion of the Board. The fact

that the Board later came to consider the comparison property to which it applied the Schedule of Values unsuitable does not indicate that the Schedule of Values was "misapplied." It instead indicates poor discretion in selecting comparison properties—properties to which the Schedule of Values was properly applied—and lack of due diligence by the Board in accepting Lowe's contentions at "face value."

Additionally, Union County's argument that the issue at hand is merely an alternative type of misapplication ignores the plain meaning of the word misapplication. What occurred in this case was not a "misapplication" of the Schedule of Values, but a proper application of the Schedule of Values to poorly selected comparison properties. Consequently, the evidence does not support a conclusion that the Schedule of Values was misapplied during the 2015 Revaluation, and the Board lacked statutory authority to order the 2017 Revaluation.

## CONCLUSION

The only genuine issue in this case is whether the Board, in fact, corrected a misapplication of the Schedule of Values in the 2017 Revaluation. We agree with the Commission's conclusion that it did not. The 2017 Revaluation of Lowe's properties was not authorized under N.C.G.S. §§ 105-322(g)(1) and 105-287, and we affirm the Commission's Order reversing the 2017 Revaluation.

AFFIRMED.

Judges TYSON and YOUNG concur.