IN RE APPEAL OF WESTMORELAND-LG&E PARTNERS

[174 N.C. App. 692 (2005)]

IN THE MATTER OF THE APPEAL OF WESTMORELAND-LG&E PARTNERS FROM THE DECISION OF THE HALIFAX COUNTY BOARD OF COMMISSIONERS FOR THE TAX YEARS 1996-2001

No. COA04-1181

(Filed 6 December 2005)

**1. Taxation-ad valorem— appeal of appraisals—standard**

Ad valorem tax appraisals are presumed correct. To rebut this presumption, the taxpayer must show that an arbitrary or illegal method was used and that the assessment substantially exceeded the true value of the property.

**2. Taxation— ad valorem—costs of preparing property for use**

There was substantial evidence to support the Tax Commission's finding that the cost of a water treatment plant was necessary to prepare a taxpayer's electricity generating facilities for their intended use, despite the donation of the water treatment plant to a local town. The county's guidelines require it to tax all costs necessary to make personal property ready for its intended use; excluding this cost would result in assessment inequities with similar taxpayers.

**3. Taxation— ad valorem—valuation—functional obsolescence**

There was substantial evidence to support the Tax Commission's conclusion that a county properly considered the effect of functional obsolescence when assessing two coal-fired electrical generating plants. The circumstances of the taxpayer's business dealings do not impact the current functionality of the two facilities.

**4. Taxation— ad valorem—valuation of electrical generating facilities—inclusion of power purchasing agreements**

The proper market against which to judge the value of taxpayer's plants under the income approach includes power purchasing agreements (PPAs). The income under the PPAs is an essential part of the market for the taxpayer's property.

Appeal by defendant from decision entered 26 May 2004 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 20 April 2005.

IN RE APPEAL OF WESTMORELAND-LG&E PARTNERS

[174 N.C. App. 692 (2005)]

*Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker and Rebecca B. Joyner, for plaintiff-appellee.*

*Maupin Taylor, P.A., by Charles B. Neely, Jr., Nancy S. Rendleman and Kevin W. Benedict and Hatch, Little & Bunn, L.L.P., by Harold W. Berry, Jr. and A. Bartlett White, for defendant-appellant.*

CALABRIA, Judge.

Westmoreland-LG&E Partners ("taxpayer") appeals the final decision of the North Carolina Property Tax Commission ("Commission") confirming the *ad valorem* tax valuation by Halifax County ("appellee") of taxpayer's business personal property ("personal property"). We affirm.

This appeal concerns the tax value of the Roanoke Valley Energy Facility ("ROVA"), which consists of two coal-fired generating facilities located in the Weldon Township of Halifax County, North Carolina. The first facility, ROVA I, has the capacity to generate 165 net megawatts of electricity from pulverized coal. It commenced commercial operations on 29 May 1994. The second facility, ROVA II, has the capacity to generate 44 net megawatts of electricity from pulverized coal, and it commenced commercial operation on 1 June 1995.

ROVA I and II operate as wholesale generators and sell their electricity to Virginia Power and Light Company ("VEPCO") pursuant to two separate Power Purchasing and Operating Agreements ("PPAs") entered into in January of 1989 and June of 1990. Under the PPAs, taxpayer agreed to build and operate the subject facilities and to supply VEPCO with electricity at a set price for twenty-five years from the respective commercial operations date, with possible extensions on each PPA of up to five years.

On 10 May 2001, the Halifax County Assessor implemented an audit program to verify the accuracy of personal property listings that were filed by businesses for the 1996 through 2001 tax years. An audit of taxpayer's records for those years showed a variance between the capitalized cost of its personal property assets reported in taxpayer's accounting records and the cost reported by taxpayer on its personal property listings that were filed with the county. Specifically, the discovery audit revealed taxpayer under-reported its personal property assets by approximately $75 million each year. Based upon the audit, the Tax Administrator determined taxpayer did not properly list its

IN RE APPEAL OF WESTMORELAND-LG&E PARTNERS

[174 N.C. App. 692 (2005)]

business personal property and issued a discovery and appraisal as directed by N.C. Gen. Stat. § 105-312 (2003).

Appellee retained independent appraisers to assess the true value of taxpayer's facilities using both the cost approach and income approach methodology of valuation. Applying the cost approach method, the appraisers used the Cost Index and Depreciation Schedules promulgated by the North Carolina Department of Revenue to assess taxpayer's property. They considered, but made no adjustments for, functional or economic obsolescence. Under the income approach, the appraisers used the income projections based on the income earned under the PPAs, instead of the spot market prices for electric power for the years in question. Using these two approaches, the appraisers determined that the total true value of taxpayer's personal property was $217,924,791 as of 1 January 1996; $211,660,877 as of 1 January 1997; $200,670,919 as of 1 January 1998; $192,397,397 as of 1 January 1999; $185,008,704 as of 1 January 2000; and $176,580,042 as of 1 January 2001.

Subsequently, taxpayer hired Lawrence VanKirk ("VanKirk") and Glen Hartford ("Hartford") of Valuation Research to perform an appraisal of the value of taxpayer's personal property without referring to appellee's appraisal report. VanKirk and Hartford also used the cost and income approaches. However, under the income approach, VanKirk projected taxpayer's revenue for the subject property as consistently lower than the price actually received by taxpayer under the PPAs because VanKirk's revenue valuations were based on the spot market price for electric power for the 1996-2001 tax years. As a result, Hartford, analyzing the property's value under the cost approach, determined that there were insufficient earnings to support the calculated asset value of the property, and concluded that the property was subject to economic obsolescence. Additionally, Hartford found the property was subject to functional obsolescence because taxpayer needed to construct two electric generating plants capable of producing 209 megawatts at the same location rather than one plant capable of producing 209 megawatts. Based on this appraisal, Hartford and VanKirk concluded that the total true value of taxpayer's property was: $124,400,000 as of 1 January 1996; $123,000,000 as of 1 January 1997; $117,000,000 as of 1 January 1998; $116,000,000 as of 1 January 1999; $108,000,000 as of 1 January 2000; and $104,000,000 as of 1 January 2001.

On 26 May 2004, the Commission confirmed the appraiser's values and made the following pertinent findings of fact:

6. During the 1996-2001 tax years at issue, the Halifax County business personal property listing forms provided, in pertinent part: "Property should be reported at 100% acquisition cost including installation, sales tax, freight and all other costs incurred with obtaining the property and making it ready for its intended use." For the years at issue, the Tax Administrator required all taxpayers to list 100% of the acquisition costs of their business personal property.

7. The taxpayer did not list 100% percent of the acquisition costs of the machinery and equipment and related business personal property situated in Halifax County even though it capitalized such costs for accounting and income tax purposes.

8. The discovery issued by the Tax Administrator was proper since the Taxpayer failed to list all costs associated with the acquisition of the assets, as well as the costs associated with bringing the assets into operation. The Tax Administrator then properly applied the North Carolina Department of Revenue Cost Index and Depreciation Schedules to these costs to determine the values of Taxpayer's Property[.]

Based on these findings of fact, the Commission also made the following pertinent conclusions of law:

6. The North Carolina Department of Revenue recommends that all costs associated with the acquisition of an asset, as well as the costs associated with bringing the property into operation, be included in the cost of an asset when listing the property for *ad valorem* tax purposes. These costs include direct and indirect costs, and may include, but are not limited to invoice cost, trade-in allowances, freight, installation costs, sales tax, expensed costs, and construction period interest.

7. [T]he Tax Administrator properly applied the Cost Index and Depreciation Schedules developed by the North Carolina Department of Revenue to those costs to reach the assessed values for the subject property.

8. Halifax County consistently applied this method of assessment to all taxpayers to reach the assessed values of their business personal property.

9. The Taxpayer did not produce competent, material and substantial evidence to show that Halifax County employed an arbitrary or illegal method of appraisal as to the subject property.

10. The Taxpayer did not produce competent, material and substantial evidence to show that the values assigned to Taxpayer's personal property **substantially** exceeded the true values in money of the subject property. (Emphasis in original.)

11. The County Board's decision properly reflected the true values in money of the Taxpayer's personal property as of January 1, 1996, January 1, 1997, January 1, 1998, January 1, 1999, January 1, 2000, and January 1, 2000.

From this decision by the Commission, taxpayer appeals.

I. Standard of Review

[1] The standard of review for decisions of the Commission on appeal is set forth in N.C. Gen. Stat. § 105-345.2(b) (2003):

> [T]he court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of any Constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or
>
> (4) Affected by other errors of law; or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

Appellate courts review all questions of law *de novo* and apply the "whole record" test where the evidence is conflicting to determine if the Property Tax Commission's decision has any rational basis. *In re Univ. for the Study of Human Goodness & Creative Grp. Work*, 159 N.C. App. 85, 88, 582 S.E.2d 645, 648 (2003). Under *de novo* review for decisions of the Property Tax Commission, the Court of Appeals considers the matter anew and freely substitutes its own judgment for

that of the Commission. *In re Appeal of Church of Yahshua the Christ at Wilmington*, 160 N.C. App. 236, 238, 584 S.E.2d 827, 829 (2003). By way of comparison, under the "whole record test," this Court may not replace the Commission's judgment with its own judgment even if there are two reasonably conflicting views; rather, we merely determine whether an administrative decision has a rational basis in evidence. *In re Appeal of Perry-Griffin Foundation*, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218 (1993). In so doing, we evaluate whether the Commission's decision is "supported by substantial evidence, and, if it is, the decision cannot be overturned." *In re Appeal of Interstate Income Fund I*, 126 N.C. App. 162, 165, 484 S.E.2d 450, 451 (1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977).

Our General Assembly requires appraisals for all property in this State for *ad valorem* taxation purposes at the property's "true value in money" or market value as far as practicable. N.C. Gen. Stat. § 105-283 (2003). It is well-settled in this State that *ad valorem* tax assessments are presumed correct. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). In order to rebut this presumption, the taxpayer must present competent, material, and substantial evidence that tends to show (1) either the county tax supervisor used an arbitrary or illegal method of valuation and (2) the assessment substantially exceeded the true value in money of the property. *Id.*, 287 N.C. at 563, 215 S.E.2d at 762. It is not enough for the taxpayer to merely show that the method used by the county tax supervisor was wrong; the taxpayer must additionally show that the result of the valuation is substantially greater than the true value in money of the property assessed. *Id.*

II. Arbitrariness or Illegality of Assessment

In its first assignment of error, taxpayer asserts the Commission erred in concluding that taxpayer did not produce competent, material, and substantial evidence that the County's method of appraisal was arbitrary or illegal. Specifically, taxpayer argues that the County's assessment was arbitrary and illegal in that it (a) included the cost of a water treatment plant taxpayer built but later deeded to the Town of Weldon; (b) failed to take into account functional obsolescence; (c) failed to take into account economic obsolescence; and (d) failed to consider the income approach in valuating the property.

A. The Water Treatment Plant

[2] Taxpayer first argues that the County's discovery was arbitrary and illegal because the assessment included the cost of a $5 million water treatment plant that taxpayer built but later transferred to the Town of Weldon. We disagree.

Under N.C. Gen. Stat. § 105-291 (2003), the Department of Revenue has the power to (1) "prescribe the forms, books, and records to be used in the listing, appraisal, and assessment of property and in the levying and collection of property taxes, and how the same shall be kept" and (2) "develop and recommend standards and rules to be used by tax supervisors and other responsible officials in the appraisal of specific kinds and categories of property for taxation." As permitted by Department of Revenue regulations, the Halifax County guidelines provide that the acquisition cost of property includes "installation, sales tax, freight, and *all other costs* incurred with obtaining the property and making it ready for its intended use." It follows that the acquisition cost determination in the instant case must include any amount spent in order to make taxpayer's personal property ready for use.

In the instant case, the County is not assessing taxpayer directly as the owner of the water treatment plant but is, instead, assessing the treatment plant's costs as part of the acquisition and development costs associated with the ROVA I and II facilities pursuant to its guidelines. Bruce Holden, the vice-president of Westmoreland, testified that appellant considered the building of the water treatment plant a development cost and if the plant had not been built, Westmoreland would have had huge capacity restraints in the future. Thomas Tinker, a County appraiser, also testified the water treatment plant was required for the facilities to be operational and that, absent the arrangement with the Town of Weldon, taxpayer would have been required to build the water treatment plant itself. The taxpayer also listed the cost of the water plant as an asset on its books and capitalized the cost each year on its federal tax returns, further indicating taxpayer treated the construction of the water plant as an indirect cost when building its facilities. Thus, there is competent evidence that the water plant's cost was incurred to make the boilers and other machinery ready for use. Since the County's guidelines require it to tax all costs necessary to make personal property ready for its intended use, excluding this type of cost in the instant case would result in assessment inequities when compared to what is required of similar taxpayers in Halifax County. Accordingly, as there is substan-

tial evidence to support the Commission's finding that the cost of the water treatment plant was necessary to make taxpayer's property ready for its intended use, such cost was properly included in the County's discovery assessment.

B. Functional Obsolescence

[3] Taxpayer next asserts the County's assessment was illegal and arbitrary because it failed to take into account functional obsolescence when using the cost approach method of valuating its personal property. Specifically, taxpayer argues the assessment should have factored in functional obsolescence based on the fact that the construction of one larger plant producing 209 kilowatts would have been less expensive than building two smaller plants during the years assessed. We disagree.

> Part of the cost approach is deducting for depreciation, which is "a loss of utility and, hence, value from any cause . . . the difference between cost new on the date of appraisal and present market value." Depreciation may be caused by deterioration, which is a physical impairment, such as structural defects, or by obsolescence, which is "an impairment of desirability or usefulness brought about by changes in design standards (functional obsolescence) or factors external to the property (economic obsolescence)."

*In re Appeal of Stroh Brewery*, 116 N.C. App. 178, 186, 447 S.E.2d 803, 807 (1994). The *Business Personal Appraisal Manual* published by the North Carolina Department of Revenue's *Ad Valorem* Tax Division defines functional obsolescence as a "loss in value due to impairment of functional capacity . . . inherent in the property itself." North Carolina Dept. of Revenue Ad Valorem Tax Division, *Business Personal Property Appraisal Manuel*, 7-17 (1995). These factors include overcapacity, inadequacy or changes in the state of the art, or poor design. *Id.*

Taxpayer's argument does not speak to any technological or design factors inherent in the ROVA I or II facilities that impair the property's desirability or usefulness. Its argument merely states that, if it had been aware of all the additional contracts, it could have saved money by tooling once to meet those contracts rather than tooling twice. However, the circumstances of taxpayer's business dealings does not impact the current functionality of the two facilities. The record indicates both plants have outstanding performance records, operate above industry standards in production, have no environ-

mental problems, and have been consistently profitable. Based on these factors and the possible benefits to having two facilities instead of one, Tinker rejected the argument that taxpayer's personal property was functionally obsolescent. Although taxpayer presented evidence to the contrary, there is substantial evidence to support the Commission's conclusion that the County properly considered the effect of functional obsolescence.

Moreover, taxpayer failed to offer competent, material, and substantial evidence that any error in assessing functional obsolescence resulted in the amount of the County's assessment substantially · exceeding the true value of its property. The assessment offered into evidence by taxpayer's expert failed to analyze what effect building one coal plant instead of two would have on the tax valuation. Instead, the assessment dealt with calculating a functional obsolescence penalty based on the cost of replacing taxpayer's coal burning facility with a gas powered facility. Taxpayer's expert testified at the hearing that, even absent the functional obsolescence penalty he assigned in his assessment, there "[wa]s a functional penalty alone in the pulverized coal facility as a pulverized coal facility, because . . . in essence, one facility would have cost *perhaps* $20-30 million less[.]" This qualified and speculative statement, standing alone and unsupported by independent research, does not constitute substantial evidence to establish there has been an overvaluation of taxpayer's property. Accordingly, we find the Commission properly considered the evidence on functional obsolescence and find no error.

C. Economic Obsolescence

[4] Taxpayer next argues the County's discovery assessment failed to take into account economic obsolescence when valuing taxpayer's personal property, rendering the assessment arbitrary and illegal. Specifically, taxpayer asserts the County's income approach erroneously relied solely on the income projections under the PPAs instead of looking at the spot market prices at the time of the assessment dates. Taxpayer contends that this failure to study the spot market price for electricity gave the County "no basis to determine the existence of economic obsolescence and correctly complete its cost approach valuation."

In *In re Appeal of Belk-Broome,* 119 N.C. App. 470, 458 S.E.2d 921 (1995), this Court reviewed the Commission's decision to uphold a tax valuation assigned to one of three anchor department stores at a mall. We observed that a mall developer must first secure anchor

IN RE APPEAL OF WESTMORELAND-LG&E PARTNERS

[174 N.C. App. 692 (2005)]

department stores prior to construction in order to attract both customers and tenant stores and, thereby, make the mall viable. *Id.*, 119 N.C. App. 475, 458 S.E.2d at 925. Accordingly, the operating agreement between the mall developer and the anchor store, which defines each party's respective rights and obligations, customarily offered anchor stores lower rental rates and purchase prices in exchange for the anchor store's promise "to operate only as a department store and . . . not to sell the property to any entity other than an acceptable anchor department store." *Id.*, 119 N.C. App. at 476, 458 S.E.2d at 925. In finding error in the County assessor's valuation, we noted that he considered solely the normal market rents and failed to consider the specific operating agreement of the taxpayer anchor store, which was the market standard. *Id.*, 119 N.C. App. at 476, 458 S.E.2d at 925. This Court further observed that the operating agreement in *Belk-Broome* was "an integral part" of the market; therefore, "[t]he property must be valued according to that market." *Id.*, 119 N.C. App. at 478, 458 S.E.2d at 926. "Placing a lower value on th[e] property solely because it is an anchor store may appear illogical, but this unequal treatment is a part of the market that must be considered." *Id.*[1]

In the present case, taxpayer owns two coal powered plants and a PPA guaranteeing for 25 years an income that exceeds the income obtainable absent the contract. The evidence in the instant case shows that large electric power plants constructed during the early 1990's were built and financed on the basis of the PPAs. In fact, testimony indicated taxpayer would not have been able to obtain construction financing for these facilities unless the PPA had been negotiated and executed. Taxpayer's own witness, Chris Ganley, the senior manager at LG&E, acknowledged that taxpayer's plant could not operate in the spot market and that without the PPAs their facilities would shut down. He further testified that in a recent attempt to sell the facilities, the income projections given to the buyer were based on the revenues received under the PPAs, indicating that the PPAs

---

1. Taxpayer's reliance, therefore, upon cases such as *In re Southern Railway*, 313 N.C. 177, 328 S.E.2d 235 (1985), *In re Appeal of Greensboro Office Partnership*, 72 N.C. App. 635, 325 S.E.2d 24 (1985), *rev. denied*, 313 N.C. 602, 330 S.E.2d 610 (1985), and *In re Pine Raleigh Corp.*, 258 N.C. 398, 128 S.E.2d 855 (1963), is misplaced. These cases establish that, for purposes of N.C. Gen. Stat. § 105-283, property should be valued at market value or "the price . . . at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used[.]" As distinguished by *Belk-Broome*, where an operating agreement is a market standard such that it affects the price a willing buyer would pay a willing seller, it is appropriate to consider the terms of such agreement.

were included in any transfer of taxpayer's personal property. Taxpayer's argument, that its income must be determined based on spot market prices, ignores the necessity for taxpayer to negotiate the PPA and fix its income stream for the period in question. Like the operating agreement in *Belk-Broome*, the income received under the PPAs are an integral part of the market for taxpayer's property; therefore, any assessment of this property's income must factor in the revenue streams received under these PPAs. The existence of the PPA is not something unique to this facility but was a market standard during the tax years in question. Accordingly, the proper market against which to judge the value of taxpayer's plants under the income approach is that consisting of the existing facilities with the PPAs, and taxpayer's argument that the County's cost approach failed to factor in economic obsolescence is rejected.

D.  Failure to Consider the Income Approach

Taxpayer next asserts the failure by the County to consider the income approach renders the County's discovery assessment arbitrary and illegal. However, this argument is based on the assumption that the County's assessment under the income approach was improper. Having concluded that the County correctly valued taxpayer's personal property under the income approach, we need not address this contention.

III.  Taxpayer's Remaining Arguments

Finally, taxpayer contends the assessed value of taxpayer's personal property substantially exceeded the property's true value and that the Commission failed to shift the burden of proof to the County after taxpayer presented its evidence. However, we do not reach these assignments of error, as taxpayer has failed to meet its initial burden of presenting material, competent, and substantial evidence that the tax valuation was arbitrary and illegal.

Affirmed.

Judges McGEE and ELMORE concur.