NO. COA13-1224

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF:
APPEAL OF:
Villas at Peacehaven, LLC          From the North Carolina
from the decisions of the Forsyth  Property Tax Commission
County Board of Equalization and   No. 10 PTC 011
Review concerning the valuations
of certain real property for tax
year 2009.


Appeal by taxpayer from final decision entered 16 May 2013 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 5 March 2014.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by S. Leigh Rodenbough, IV, Robert W. Saunders, and Craig D. Schauer, for taxpayer-appellant.*

> *Assistant County Attorney B. Gordon Watkins, III, for Forsyth County.*


McCULLOUGH, Judge.

Villas at Peacehaven, LLC, ("taxpayer") appeals from the Final Decision of the North Carolina Property Tax Commission (the "Commission") dismissing its appeal from the decision of the Forsyth County Board of Equalization and Review (the "Board"). For the following reasons, we reverse.

I. Background

This case concerns the revaluation of property in Winston-Salem that taxpayer owns and operates as a rental community known as Villas at Peacehaven. The property at issue is comprised of 121 adjacent tax parcels spanning approximately 25 acres. Of the 121 separate tax parcels, 120 are residential lots, each improved with a detached single-family residence. The remaining lot is improved with a clubhouse and amenities for tenants, including a pool and a tennis court.

During the revaluation, effective as of 1 January 2009, a Forsyth County Tax Assessor ("the Assessor") determined the aggregate value of all 121 lots to be $16,945,800.[1] Taxpayer appealed the Assessor's valuation to the Board, which heard taxpayer's appeal on 10 December 2009 and notified taxpayer in writing of its decision to affirm the Assessor's valuation on 15 December 2009. Taxpayer then initiated an appeal of the Board's decision by submitting an Application For Hearing to the Commission on 12 February 2010. The Commission held a final pre-hearing conference on 31 August 2012 and filed an Order On Final Pre-hearing Conference on 4 September 2012. On 13 September 2012, taxpayer's appeal came on for hearing before the

---

[1]The County later stipulated to a reduced value of $16,647,200.

Commission, sitting as the State Board of Equalization and Review.

At the hearing, taxpayer framed the issue as follows: "[W]hether or not separately platted lots with single-family residential homes constructed on them that are held by a common owner and have continuously been owned, operated, financed and managed as a single, income-producing rental property should be assessed as an income-producing property and assessed using the direct capitalization approach . . . ." Taxpayer then referred to the approach as an income approach as a unified whole rather than on an individual basis and argued for its use. Taxpayer further contended the method of valuation employed by the Assessor, in which the Assessor determined the value of each parcel separately on a cost basis using the County's schedule of values and totaled the values assigned to each parcel to reach the aggregate value, was an arbitrary and illegal method of valuation that resulted in value far in excess of the true value of the property. In support of its argument, taxpayer relied on a South Carolina Supreme Court case and the testimony of two witnesses, its managing member, and an appraiser who performed a valuation of the property using the income approach.

At the close of taxpayer's evidence, the County moved to dismiss taxpayer's appeal on the ground that taxpayer failed to carry its burden of production. Upon considering both sides' arguments, the Commission granted the County's motion in open court. A Final Decision was later entered on 16 May 2013.

Taxpayer filed Notice of Appeal and Exceptions from the Final Decision on 13 June 2013.

## II. Standard of Review

This Court's standard of review of a decision by the Commission is governed by statute. When reviewing a decision of the Commission:

> the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or

      (4)    Affected by other errors of law; or

      (5)    Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

      (6)    Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2013). "In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C. Gen. Stat. § 105-345.2(c).

> The "whole record" test does not allow the reviewing court to replace the [Commission's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*. On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the [Commission's] decision, to take into account whatever in the record fairly detracts from the weight of the [Commission's] evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the [Commission's] result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.

*In re Parkdale Mills*, _ N.C. App. _, _, 741 S.E.2d 416, 419 (2013) (citation omitted).

### III. Discussion

"It is . . . a sound and a fundamental principle of law in this State that ad valorem tax assessments are presumed to be correct." *In re Appeal of Amp, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). Yet, "the presumption is only one of fact and is therefore rebuttable." *Id.* at 563, 215 S.E.2d at 762.

> [I]n order for the taxpayer to rebut the presumption he must produce competent, material and substantial evidence that tends to show that: (1) [e]ither the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property. Simply stated, it is not enough for the taxpayer to show that the means adopted by the tax supervisor were wrong, he must also show that the result arrived at is *substantially* greater than the true value in money of the property assessed, i.e., that the valuation was *unreasonably high*.

*Id.* (quotation marks and citations omitted) (emphasis in original). "In attempting to rebut the presumption of correctness, the burden upon the aggrieved taxpayer 'is one of production and not persuasion.'" *In re Blue Ridge Mall LLC*, 214 N.C. App. 263, 267, 713 S.E.2d 779, 782 (2011) (quoting *In re IBM Credit Corp.*, 186 N.C. App. 223, 226, 650 S.E.2d 828, 830 (2007), *aff'd. per curiam*, 362 N.C. 228, 657 S.E.2d 355 (2008)).

> [If] the taxpayer rebuts the initial presumption, the burden shifts back to the

County which must then demonstrate that its methods produce true values. The critical inquiry in such instances is whether the County's appraisal methodology "is the proper means or methodology given the characteristics of the property under appraisal to produce a true value or fair market value." To determine the appropriate appraisal methodology under the given circumstances, the Commission must "'hear the evidence of both sides, to determine its weight and sufficiency and the credibility of witnesses, to draw inferences, and to appraise conflicting and circumstantial evidence, all in order to determine whether the Department met its burden.'"

*In re Parkdale Mills*, _ N.C. App. at _, 741 S.E.2d at 420 (citations omitted).

In the present case, the Commission granted the County's motion to dismiss taxpayers' appeal "for failure of [taxpayer] to rebut the initial presumption of correctness as to the county's tax assessments . . . ." Specifically, the Commission found the following:

15. In this appeal, Appellant argued that Forsyth County overvalued the units because it used an arbitrary method to value the property by not estimating a value for all of the parcels taken as a whole. When granting Forsyth County's motion to dismiss at the conclusion of Appellant's evidence, the Commission determines that Forsyth County did not use an arbitrary method to value the subject individual parcels when our Supreme Court has noted that "[a]n act is arbitrary when it is done without adequate determining principle." *In re*

> *Hous. Auth. Of City of Salisbury, Project NC 16-2*, 235 N.C. 463, 468, 70 S.E.2d 500, 503 (1952). When Appellant did not provide competent, material, and substantial evidence as to the individual values of all the parcels, then there was no evidence tending to show that the Forsyth County Assessor used an arbitrary method regarding his values for the subject parcels when his values were determined during the revaluation process and were not substantially higher than the values called for by the statutory formula.

The Commission then issued the following pertinent conclusions:

> 3. Since Appellant failed to rebut the presumptive validity of the County's individual assessments of the subject residential parcels, then the burden did not shift back to the County and no further analysis is necessary as to the County's appraisal methodology (i.e. the county is not required to demonstrate that its method produce[d] true values).

> 4. For that reason, the Commission granted Forsyth County's motion to dismiss this appeal at the conclusion of Appellant's evidence; by ruling that Appellant failed to rebut the presumptive validity of the County's individual assessments of the subject residential parcels. When granting Forsyth County's motion to dismiss, no further analysis was necessary as to the County's appraisal methodology (i.e. the Commission was not required to "hear the evidence of both sides, to determine its weight and sufficiency and the credibility of witnesses, to draw inference, and to appraise conflicting and circumstantial evidence, all in order to determine whether the County met its burden.")

Now on appeal, taxpayer argues the Commission erred in dismissing its appeal because it presented sufficient evidence to rebut the presumption of correctness. We agree.

North Carolina's uniform appraisal standards provide the following:

> All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C. Gen. Stat. § 105-283 (2013). Thus, this Court has recognized that "[a]n important factor in determining the property's market value is its highest and best use." *In re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 473, 458 S.E.2d 921, 923 (1995), *aff'd per curiam*, 342 N.C. 890, 467 S.E.2d 242 (1996).

At the hearing before the Commission, taxpayer first called its managing member, Mr. Barry Siegal, to testify. Siegal testified concerning the nature of the property and how it was purchased and developed with the intent that it be a rental complex. Siegal further testified about how the property was

managed as a rental complex with taxpayer responsible for the maintenance of the interior and exterior of the residences, common areas, and amenities.

Following Siegal's testimony, taxpayer called Mr. Dick Foster, who the County stipulated was an expert in appraisal, as a witness. Foster testified that he determined the income approach was the most appropriate valuation approach to employ in this case. Foster testified that this determination was based on the use of property as a rental complex, which Foster found to be the highest and best use given the history of taxpayer's economic success with the property. Foster further stated that "[he] thought the income approach was basically the best way to go because it was an investment-grade property, and the value of it is dictated about [sic] how much income you bring in." After explaining why he believed the income approach was the most appropriate valuation approach, Foster described how he employed the income approach to calculate the value of the property. Foster then testified that his application of the income approach produced a value of $10,905,000 for the property.

Despite the testimony elicited by taxpayer supporting use of the income approach, the County contends taxpayer did not

produce sufficient evidence that the method employed by the Assessor was arbitrary or illegal. Yet, this Court has explained that:

> [a]n illegal appraisal method is one which will not result in "true value" as that term is used in [N.C.G.S.] § [105-]283. Since [a]n illegal appraisal method is one which will not result in true value as that term is used in [N.C.G.S. § 105-283], it follows that such method is also arbitrary.

*In re Blue Ridge Mall LLC*, 214 N.C. App. at 269, 713 S.E.2d at 784 (quotation marks and citations omitted).

Keeping in mind the burden on the aggrieved taxpayer is one of production and not persuasion, *see Id.* at 267, 713 S.E.2d at 782, we hold the taxpayer produced competent, material, and substantial evidence tending to show that the Assessor's valuation was arbitrary or illegal and substantially exceeded the true value of the property.

Although we determine taxpayer rebutted the presumption of correctness, we take no position on the proper valuation method in this case and explicitly decline taxpayer's invitation to provide guidance to the Commission. We determine only that taxpayer produced sufficient evidence to rebut the presumption of correctness afforded ad valorem tax assessments. Because the Commission held otherwise and dismissed taxpayer's appeal, we reverse the Commission's Final Decision and remand the case for

the Commission to determine the appropriate valuation method. Whether it is necessary for the Commission to hear evidence beyond that already elicited from taxpayer's witnesses during direct- and cross-examinations is for the Commission to decide. We simply hold taxpayer produced sufficient evidence to require the Commission to address the valuation issue raised by taxpayer.

## III. Conclusion

For the reasons discussed above, we reverse the Final Decision of the Commission and remand for further proceedings.

Reversed and remanded.

Judges HUNTER, Robert C. and GEER concur.