IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-220

Filed: 6 February 2018

Property Tax Commission Sitting as the State Board of Equalization and Review,
No. 13 PTC 0904

IN THE MATTER OF THE APPEAL OF:

LOWE'S HOME CENTERS, LLC

From the decision of the Forsyth County
Board of Equalization and Review
concerning the valuation of certain
real property for tax year 2013.

Appeal by Lowe's Home Centers, LLC from a final decision entered 24 August 2016 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 21 August 2017.

> *Bell, Davis & Pitt, P.A., by John A. Cocklereece, Bradley C. Friesen, and Justin M. Hardy, for Appellant-Lowe's Home Centers, LLC.*
>
> *Attorney for Forsyth County, by Assistant County Attorney B. Gordon Watkins III, for Appellee-Forsyth County.*

BERGER, Judge.

Lowe's Home Centers, LLC ("Lowe's") appeals from the Final Decision of the North Carolina Property Tax Commission ("Commission") that affirmed the decision of the Forsyth County Board of Equalization and Review concerning Forsyth County's (the "County") *ad valorem* tax assessment of Lowe's real property located in Kernersville, North Carolina. Lowe's contends its evidence produced in the May 17-

19, 2016 hearing before the Commission was sufficient to rebut the presumption of correctness for the County's assessment, thereby shifting the burden of proof to the County to prove that its method of assessing Lowe's property produced a true value of that property. We agree and therefore reverse the decision of the Property Tax Commission.

Factual and Procedural Background

The County assessed Lowe's commercial property at 145 Harmon Creek Road, Kernersville, North Carolina ("Property") at $14,572,900.00, or $107.43 per square foot as of January 1, 2013. The Property was constructed in 2001 with 135,652 gross leasable square footage on 19.6 acres of land. On December 2, 2013, Lowe's contested the County's valuation of the Property by appealing the valuation to and requesting a hearing before the Commission. Prior to Lowe's appeal, both parties conducted independent appraisals. The County's assessor reappraised the Property at $16,100,000.00 or $118.69 per square foot, while Lowe's appraisal was $6,340,000.00 or $46.74 per square foot. As a result of the County's higher appraisal, the County abandoned the former assessment of $14,572,900.00 and adopted its expert's latter appraisal of $16,100,000.00.

Lowe's was granted a hearing before the Commission in its appeal of the County's tax assessment. During the May 17-19, 2016 hearing, Lowe's introduced

four expert witnesses who testified to factors used in the valuation process, as well as their valuation of the subject Property.

Lowe's first expert was David Lennhoff, a real estate appraiser and consultant, experienced in valuating 'big box' retail real estate. Lennhoff testified to the average price per square foot of other Lowe's properties in North Carolina, finding that the valuations per square foot ranged "from $18.48 a square foot to $39.34."

Lowe's second expert to testify was Charles Williamson, Director of Real Estate for Lowe's. He testified that the County's appraisal of $118.69 per square foot is the highest valuation of any Lowe's in the United States, the average valuation being $29.59 per square foot. Williamson also testified about deed restrictions placed on the resale of 'big box' properties and those restrictions' effect on valuation. His valuation of similar 'big box' properties ranged from $21.63 to $49.00 per square foot, well below the County's valuation.

Robert Meiers also testified on Lowe's behalf. Meiers has served as Lowe's Property Tax Manager for over twelve years. Meiers testified that Lowe's had previously contested tax appraisals in nineteen North Carolina counties, and that Forsyth County's assessment of $118.69 per square foot was more than double the average valuation of $56.13 per square foot. Meiers proffered tax assessment valuations of Lowe's stores in similarly situated North Carolina counties:

> Q: On this list looking at the demographics, which county is the closest to Forsyth in terms of

population and the number of building permits pulled in 2013?

A:     Cumberland County.

Q:     And what is the assessed value -- the average assessed value of Lowe's stores in Cumberland County?

A:     [$]7,309,600.

Q:     And what is that on a per square foot basis?

A:     $57.61 a square foot.

Q:     And which county is the most similar to Forsyth in terms of growth percentage between 2010 and [2014] and in terms of median household income?

A:     It would be Guilford, Guilford County.

. . .

Q:     Which is growing faster in terms of percentage growth and building permits pulled?

A:     That would be Guilford County.

. . .

Q:     What's the average assessed value of all the stores in Guilford County?

A:     [$]9,595,160.

Q:     And what is that on a per square foot basis?

A:     $74.78 a square foot.

Finally, James Katon, a real estate appraiser from Charlotte, North Carolina, was hired by Lowe's to appraise the fair market value of a fee simple interest of the Property as of the County's valuation date. Katon testified that he appraised the Property using the uniform appraisal standards mandated by N.C. Gen. Stat. § 105-283. In valuing the Property, Katon did not consider the "investment value" of the Property, but "the value of the real estate to the general real estate market." Katon's valuation for the subject Property was $6,340,000.00, or $46.74 per square foot.

After Lowe's had concluded its presentation of evidence, the County moved to dismiss Lowe's appeal because Lowe's did not "present competent, material, and substantive evidence to rebut the presumption of correctness of the [County's valuation]." The Commission granted the County's motion to dismiss. On September 19, 2016, Lowe's timely appealed the Commission's decision to grant the County's motion to dismiss.

Analysis

This Court's standard of review of a decision of the Commission is governed by N.C. Gen. Stat. § 105-345.2, which states in pertinent part:

> (a) On appeal the court shall review the record and the exceptions and assignments of error in accordance with the rules of appellate procedure, and any alleged irregularities in procedures before the Property Tax Commission, not shown in the record, shall be considered under the rules of appellate procedure.

(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

    (1) In violation of constitutional provisions; or
    (2) In excess of statutory authority or jurisdiction of the Commission; or
    (3) Made upon unlawful proceedings; or
    (4) Affected by other errors of law; or
    (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
    (6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2 (2017).

This Court reviews questions of law *de novo*, where this Court will consider "the matter anew and freely substitutes its own judgment" in place of the Commission's. *In re Appeal of Westmoreland-LG&E Partners*, 174 N.C. App. 692, 696, 622 S.E.2d 124, 128 (2005) (citation omitted). Otherwise, this Court "shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C. Gen. Stat. § 105-345.2(c) (2017). "The whole record test is not a tool of judicial intrusion; instead it merely gives a reviewing court the capability to determine whether an administrative

decision has a rational basis in the evidence." *In re Appeal of Perry-Griffin Foundation*, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218 (citation and quotation marks omitted), *disc. review denied*, 333 N.C. 538, 429 S.E.2d 561 (1993). In determining "whether the whole record fully supports the Commission's decision, this Court must evaluate whether the Commission's judgment, as between two reasonably conflicting views, is supported by substantial evidence, and if substantial evidence is found, this Court is not permitted to overturn the Tax Commission's decision." *Id.* at 394, 424 S.E.2d at 218 (citations omitted).

"All property, real and personal, shall as far as practicable be appraised or valued at its true value in money." N.C. Gen. Stat. § 105-283 (2017).

> '[T]rue value' shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

*Id.*

> It is also a sound and a fundamental principle of law in this State that ad valorem tax assessments are presumed to be correct. All presumptions are in favor of the correctness of tax assessments. The good faith of tax assessors and the validity of their actions are presumed. As a result of this presumption, when such assessments are attacked or challenged, the burden of proof is on the taxpayer to show that the assessment was erroneous.

*In re Appeal of Amp, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761-62 (1975) (citations and quotation marks omitted).

"Of course, the presumption is only one of fact and is therefore rebuttable." *Id.* at 563, 215 S.E.2d at 762. "In attempting to rebut the presumption of correctness, the burden upon the aggrieved taxpayer is one of production and not persuasion. If the taxpayer rebuts the initial presumption, the burden shifts back to the County which must then demonstrate that its methods produce true values." *In re Appeal of Villas at Peacehaven, LLC*, 235 N.C. App. 46, 49, 760 S.E.2d 773, 776 (2014) (citations, quotation marks, and brackets omitted). Therefore,

> to rebut this presumption, the taxpayer must present competent, material, and substantial evidence that tends to show (1) either the county tax supervisor used an arbitrary or illegal method of valuation and (2) the assessment substantially exceeded the true value in money of the property. It is not enough for the taxpayer to merely show that the method used by the county tax supervisor was wrong; the taxpayer must additionally show that the result of the valuation is *substantially* greater than the true value in money of the property assessed.

*In re Westmoreland*, 174 N.C. App. at 697, 622 S.E.2d at 129 (emphasis added) (citations omitted).

First, we must determine the correct approach to valuation for the case *sub judice*. The Commission concluded that the sales comparison approach and the income approach that Lowe's had used "were shown to have weaknesses that limited the credibility of the value estimate." The cost approach, as used by the County, was

determined by the Commission to be the appropriate method to determine the true value of the fee simple interest in the Property. However, "[t]he cost approach is better suited for valuing specialty property or newly developed property." *In re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 474, 458 S.E.2d 921, 924 (1995), *aff'd per curiam*, 342 N.C. 890, 467 S.E.2d 242 (1996). This Court has previously been critical of relying on the cost approach.

> For example, the cost approach's primary use is to establish a ceiling on valuation, rather than actual market value. It seems to be used most often when no other method will yield a realistic value. The modern appraisal practice is to use cost approach as a secondary approach because cost may not effectively reflect market conditions.

*Id.* (citations and quotation marks omitted).

Relying on only one method to establish valuation does not necessarily mean that the method was arbitrary or illegal.

> An illegal appraisal method is one which will not result in 'true value' as that term is used in N.C.G.S. § 105-283. Since an illegal appraisal method is one which will not result in true value as that term is used in N.C.G.S. § 105-283, it follows that such method is also arbitrary. In appraising the true value of real property, N.C.G.S. § 105-317 has been interpreted as authorizing three methods of valuing real property: the cost approach, the comparable sales approach, and the income approach. However, the general statutes nowhere mandate that any particular method of valuation be used at all times and in all places. The statute contemplates that the assessors and the Commission will consider which factors in N.C.G.S. § 105-317 apply to each specific piece of property in appraising its true value. N.C.G.S. § 105-317 expressly directs that consideration be given to the income producing ability of

> the property where appropriate. Obviously, this is an element which affects the sale of properties, the purpose of which is the production of income. To conform to the statutory policy of equality in valuation of all types of properties, the statute requires the assessors to value all properties, real and personal, at the amount for which they, respectively, can be sold in the customary manner in which they are sold. An important factor in determining the property's market value is its highest and best use. It is generally accepted that the income approach is the most reliable method in reaching the market value of investment property.

*In re Appeal of Blue Ridge Mall, LLC*, 214 N.C. App. 263, 269-70, 713 S.E.2d 779, 784 (2011) (emphasis, citations, quotation marks, and brackets omitted).

The Property at issue here is held by Lowe's to facilitate the production of income, and this is the Property's highest and best use. Relying on the cost approach to valuation may have established a ceiling on the Property's valuation, but consideration should have been given to the income and comparable sales approaches to establish a true value. Therefore, in substantially relying on the cost approach, the County used an arbitrary and illegal method of valuing the Property.

Lowe's must also show that the assessment substantially exceeded the true value in money of the property. The County's original assessment of the Property was for $14,572,900.00, and its subsequent assessment was for $16,100,000.00. Lowe's experts explained their valuation methods in detail and how they resulted in a valuation of $6,340,000.00. Whichever assessment the County adopts from their appraiser, those valuations are more than *double* the valuation determined, and

substantiated, by Lowe's. Either difference is a substantial difference. Furthermore, by abandoning its assessed value in favor of the higher opinion of value given by its expert, the County has also abandoned the presumption of correctness afforded its initial *ad valorem* tax assessment.

Keeping in mind that the burden on the taxpayer is of production and not persuasion, Lowe's met its burden of producing competent, material, and substantial evidence tending to show that the County's valuation was arbitrary and illegal, and substantially exceeded the true value of the Property. We therefore reverse the Final Decision of the Commission and remand to address the valuation issue raised by the taxpayer.

Furthermore, because N.C. Gen. Stat. § 105-345.1 (2017) instructs this Court to remand cases so that the Commission can receive "evidence [that] has been discovered since the hearing before the Property Tax Commission that could not have been obtained for use at that hearing by the exercise of reasonable diligence, and will materially affect the merits of the case," the Commission should consider such competent and material evidence that has come to light since the time of its hearing on this matter.

Conclusion

For the foregoing reasons, we vacate the Final Decision of the North Carolina Property Tax Commission dismissing the appeal of Lowe's. We remand for a

reevaluation of the 2013 decision of the Forsyth County Board of Equalization and Review consistent with this opinion.

REVERSED AND REMANDED.

Chief Judge MCGEE and Judge DIETZ concur.